[No. 20678.   Department One.   October 14, 1927.]

AUGUST LYBERG *et al.*, *Appellants*, v. HENRY O. HOLZ
*et al.*, *Respondents.*[1]

[1] NEW TRIAL (49) — MISCONDUCT OF JURORS — IMPEACHMENT —
MATTERS NOT INHERING IN VERDICT. Prejudicial misconduct of
the jurors, not inhering in the verdict, and which may be
shown by the affidavits of the jurors, making it error to refuse
a new trial, is shown where it appears, in an action for wrong-
ful death, that a juror informed the others of an offer of com-
promise which plaintiff refused because he intended to bring
a manslaughter charge against one of the defendants if the
evidence showed his negligence, and that expenses incurred by
plaintiff were paid to the Catholic church for masses, and the
foreman told the jury that "we can't go by the instructions"
given by the court; in view of the rule that the jurors may
state the facts and that it is for the court to determine their
probable effect.

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered November 29,
1926, upon the verdict of a jury rendered in favor of
the defendants, in an action for wrongful death. Re-
versed.

*Guy E. Kelly, Thomas MacMahon*, and *James F.
O'Brien*, for appellants.

*Lewis P. Shackleford*, for respondents.

TOLMAN, J.—This is an action to recover for the al-
leged wrongful death of the infant child of the plain-
tiffs. Trial was had to a jury, which rendered a verdict
for the defendants. A motion for a new trial was in-
terposed and denied. Judgment of dismissal was en-
tered on the verdict, and the plaintiffs have appealed.

The sole question raised here is: Did the trial court
err in refusing to grant a new trial on the ground of
misconduct on the part of the jury? The facts thought

[1]Reported in 259 Pac. 1087.

to establish misconduct are shown by the affidavits of three of the jurors. There are no controverting affidavits, and the facts set out in these affidavits must be accepted as true.

Briefly summarized, these facts are that, after the jury had retired to consider its verdict, the foreman of the jury said, in the presence of all of the jurors, in effect, that, if the defendant Otto Holz, who was the driver of the automobile which caused the death, then being a boy of about eighteen years of age, was found guilty of negligence, he would thus be laid open to a charge of manslaughter which would be held over him until he was twenty-one years old, and he could then be prosecuted upon such a charge. That the father had testified that he had expended one hundred and forty-eight dollars in funeral expenses, and altogether had expended some five hundred dollars in time and money; and one of the jurors stated that part of what was expended over one hundred forty-eight dollars was paid to the Catholic church for masses, and that she had heard of large sums of money so paid, from acquaintances who were members of that church. That another juror stated as a fact that the father had been offered seven hundred dollars by the respondent Henry Holz in settlement of the case, but that the offer was refused, because the father wanted to lay the foundation for a manslaughter case against Otto Holz. Another juror spoke of one of the defendants' witnesses as a fine boy from a fine religious family. And finally, that during the deliberations, some juror suggested that the court's instructions be read over and that the foreman of the jury replied thereto, "We can't go by the instructions." Other matters are referred to in the affidavits, but they are such as so clearly inhere in the verdict that mention of them is omitted.

[1]   No rule is better established than that which forbids a juror to impeach his own verdict.  But the difficulty in most cases is to determine what inheres in the verdict and what does not.  In *State v. Parker*, 25 Wash. 405, 65 Pac. 776, Judge Hadley, speaking for the court, said:

"In considering the affidavits filed, we entirely discard those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself.  It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them the court will determine what was the probable effect upon the verdict.  It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors. We do not see how any other conclusion can be reached than that they were highly prejudicial, including, as they did, the statement of alleged damaging facts concerning appellant which had not been introduced in evidence upon the trial."

The statement of the juror there referred to as damaging and prejudicial being to the effect that he knew the defendant on trial was guilty, and that he belonged to a gang of toughs who were implicated in a homicide (that not being the crime with which the accused was then charged).

In *Ralton v. Sherwood Logging Co.*, 54 Wash. 254, 103 Pac. 28, the misconduct was the alleged refusal of the jury to follow the court's instructions, and of course it was held, and properly so, that no juror would be permitted to so impeach his verdict.

In *Maryland Casualty Co. v. Seattle Electric Co.*, 75 Wash. 430, 134 Pac. 1097, Judge Ellis, after calling attention to those cases in other jurisdictions which make no distinction between the fact of misconduct

and its effect on the verdict and holding that neither may be shown by the affidavit of a juror, says:

"In this state we have applied the rule less drastically. We have, in certain cases, used language implying that affidavits of jurors should be considered in so far as they stated the facts showing misconduct, but not as showing the effect of such misconduct on the verdict, the latter being for the court to determine from the facts.

"This application of the rule seems to us to meet every purpose of public policy. It prevents the jury from divulging what considerations entered into its deliberations or controlled its action, thus impeaching its own verdict; but it does not close what is often the only avenue to a showing of actual facts constituting misconduct. We conclude that the affidavit of the juror as to the simple fact of her misconduct in visiting the scene of the accident would have been admissible to invoke the discretion of the trial court to entertain the motion and either grant or deny a new trial."

This rule was applied in *State v. McChesney*, 114 Wash. 113, 194 Pac. 551, on the authority of *State v. Parker, supra.*

In *Henslin v. Pratt*, 119 Wash. 443, 205 Pac. 867, the late Judge Bridges reviewed most of our cases upon this subject, and held that a showing by affidavit of a misunderstanding of the testimony by the jurors could not be considered, since that was a matter inhering in the verdict.

It would seem that no absolute rule has been laid down in this state as to what does and what does not inhere in the verdict, save only the rule formulated by Judge Hadley in the *Parker* case, and reiterated by Judge Ellis in the *Maryland Casualty* case. Neither case has ever been criticized, modified or overruled by this court.

One of the matters set up in this case, we think, falls clearly within that rule. We refer to the state-

ment in the jury room of the alleged offer of com-
promise, and its rejection because the father wanted
to lay the foundation for a criminal charge. It is
suggested that bringing to the attention of the jury an
offer of compromise, if prejudicial at all, would be so
to the respondents only, as being an indication or ad-
mission of liability or fault on their part. If the state-
ment had been limited to the offer alone, that might
be true; but it was directly coupled with the statement
that the offer was refused for an ulterior purpose
which easily might and probably did prove prejudicial
to the appellants. Whether such a statement might
have been received in evidence, if offered, is beside the
point. The question for the court is only, was it
prejudicial?

Little as we are disposed to set aside a verdict which
is well sustained by the evidence, still, the fountain of
justice must not be defiled. The supreme court of
Texas, in the case of *Moore v. Ivey*, 277 S. W. (Tex.)
106, makes some pertinent observations upon this sub-
ject, which we quote:

"The determinative rules, or principles, of law are
plain and well established. If, upon a consideration
of the whole of the pertinent record, it is reasonably
doubtful whether or not the improper conduct affected
the amount of the verdict or the decision of any other
material issue, the verdict should be set aside by the
trial judge; if, in such a case, a new trial is not granted,
there is an abuse of discretion by the trial judge, and
reversal becomes the duty of appellate courts. [Citing
cases.] It may be clear that eleven (or a lesser num-
ber) of the jurors were not, to any degree, influenced
by the improper conduct; yet if it remains reasonably
doubtful whether one (or a larger number) was, or was
not, influenced, the vice remains and the verdict must
be set aside (*Southern Traction Co. v. Wilson, supra*)
because each juror can rightly agree to the verdict only
when guided solely by the instructions of the trial
judge and the evidence heard in open court. A proper

corollary, is that, when misconduct is once shown, and there is reasonable doubt as to its effect, that doubt must be resolved against the verdict. Faithful adherence to these principles is essential to the due and orderly administration of the law; infidelity here makes justice doubtful and invites corruption at its source. To the extent that verdicts may be affected or controlled by external or extraneous influence projected into jury rooms, due process of law is mocked, even though its forms be meticulously observed, and government is subverted through the most dangerous and insidious of processes."

The judgment is reversed, with directions to grant the motion for a new trial.

MACKINTOSH, C. J., MITCHELL, and FRENCH, JJ., concur.

PARKER, J. (dissenting)—I dissent. If this verdict is to be set aside for the cause here appearing by the affidavits of the jurors, then there is practically no stability in verdicts.