[No. 27340. Department One. August 10, 1939.]

ALICE M. DIBLEY, *Respondent,* v. WILLIAM F. PETERS
*et al., Appellants.*

WORTHIE MATTHEWS, *Respondent,* v. WILLIAM F. PETERS
*et al., Appellants.*

HERBERT D. GREEN, *Respondent,* v. WILLIAM F. PETERS
*et al., Appellants.*[1]

[1]Reported in 93 P. (2d) 720.

*Edge & Keith, H. E. Sarette,* and *Norman DePender,* for appellants.

*H. Earl Davis* and *C. A. Orndorff,* for respondents.

JEFFERS, J.—This appeal is from an order granting a new trial in each of three actions, consolidated for the purpose of trial, after a verdict in favor of the defendants in each action.

The suits were instituted by plaintiffs, Alice M. Dibley, Worthie Matthews, and Herbert D. Green, against defendants William F. Peters and Ethel Peters, his wife, to recover damages for injuries claimed to have been sustained by plaintiffs as the result of an automobile accident. Plaintiffs in each case claimed the accident was caused by the negligence of defendant Ethel Peters in the operation of an automobile driven by her.

Defendants filed an answer to the complaint in each case, wherein they denied any negligence on their part, and alleged affirmatively that plaintiffs and the driver of the car in which they were riding were guilty of contributory negligence, and further alleged that plaintiffs and one Garland D. Connor, the driver

of the car in which plaintiffs were riding, at the time of the accident were engaged in a common enterprise or joint venture.

The jury returned a verdict in favor of defendants in each case.

Plaintiffs interposed a motion for new trial on all the statutory grounds. The motion was granted on the sole ground of the misconduct of juror W. E. Cassidy.

Plaintiffs filed six affidavits in support of their motion, and defendants filed ten controverting affidavits. We shall attempt to summarize these affidavits as briefly as possible, first taking up the affidavits filed by plaintiffs.

D. R. Cork states in his affidavit that he had known W. E. Cassidy for fifteen years, and that he (Cassidy) had been following carnivals and had been operating carnival games of chance, giving blankets and other merchandise as prizes; that, on January 19, 1938, the same day the jury in the instant action was released, after having returned its verdict, affiant met Cassidy on the street in Spokane and had a conversation with him, in which Cassidy stated that he had just been released from the Peters case, that he had done good work for the Peters and saved them a bunch of money for his work on the jury, and that he was going to get in touch with Peters, asking affiant if he knew where Peters lived; that a couple of days later, affiant again met Cassidy on the street and had another conversation with him, in which he stated that, while he was sitting as a juror in the Peters case, he had been informed that both cars involved in the accident had liability and property damage insurance, that the company covering the car in which plaintiffs were riding had made settlement for injuries to some of the occupants of the Peters car, and that that was proof the Peters were not to blame.

The affidavit of Andrew James Duncan, who was a juror in this case, states that, during the time the case was being tried and before it had been submitted to the jury, Cassidy, on several occasions, tried to discuss the facts of the case with affiant, and that, on one occasion, Cassidy stated to affiant that he had talked to the prosecutor in regard to the case and had been informed by the prosecutor that there was five thousand dollars insurance on each car, and that the issue in the action was overinsurance; that affiant informed Cassidy that, under the instructions of the court, they were not to discuss the case until it had been submitted to them by the court, but that Cassidy still attempted to discuss the case with affiant; that, before the case was submitted to the jury, affiant observed Cassidy talking to other jurors, and affiant knew, from what he heard, that they were discussing the case and the facts with reference to insurance, Cassidy claiming to know there was insurance involved in the case; that, when the jury retired to the jury room to consider their verdict, Cassidy immediately announced that the only way attorney Davis, for plaintiffs, would get his money was through the insurance company, providing he won this case, but that he (Cassidy) had sympathy for the Peters and would not vote against them; that there was some discussion as to whether or not Mrs. Peters was intoxicated, but Cassidy stated that, so far as he was concerned, that did not enter into it, and refused to discuss the facts of the case with affiant or the other jurors, but from the start took the attitude that, regardless of the facts, he was for the Peters; that, when the question of negligence on the part of Mrs. Peters was discussed, Cassidy took the position and stated that it appeared that plaintiff Green was making enough money to take care of himself, and that

Peters should not be stuck for damages, when plaintiffs did not need the money.

The affidavit of H. Earl Davis, one of the attorneys for plaintiffs, relates that, immediately after the return of the verdict in the instant case, he had a talk with juror Cassidy, in which Cassidy stated that he controlled the jury and was responsible for the verdict in favor of Peters, and further stated that, after he had looked the case over, he felt "that there was only one cow to milk, and that the only cow that had any milk was the Peters;" that Cassidy stated to affiant, in his office, on or about February 15, 1938, that he (Cassidy) had known Lester Edge for a long time, that he had known there was insurance on both cars and felt the lawsuit was between the insurance companies; that he had learned from authoritative sources, between the time the jury was selected and the time the case was submitted to the jury, that the company carrying the insurance on the car in which plaintiffs were riding had made a settlement with Betty Hurst, one of the occupants of the Peters car, and that to him that was an admission of liability on the part of Connor; that Cassidy further stated to affiant that he knew and had found out that there was three thousand dollars insurance on the Peters car, and that there had been an offer made to plaintiffs to settle for three thousand dollars; that affiant tried to find out from Cassidy the source of his information, but Cassidy only made answer that "jurors are not so dumb, they have a way of finding out things;" that, at the conclusion of the case, the jury was polled, and jurors Andrew John Duncan and Effie Pringle dissented from the verdict.

The affidavit of Paul K. Cooney, an employee in the office of H. Earl Davis, states that, on February 15, 1938, he called juror Cassidy on the telephone, and that subsequently Cassidy came into the office, and in a

conversation with affiant, Cassidy stated, in substance, that, after the jury was selected and before the case was submitted to them, he (Cassidy) learned from sources which convinced him of the truth of the statements, that there was insurance on both cars involved in the accident, and that Betty Hurst, one of the witnesses for defendants and one of the occupants of defendants' car, had been paid some figure, which he learned to be around seven hundred dollars; that Cassidy would not reveal the source of his information.

The affidavit of Herbert D. Green, one of the plaintiffs herein, states that he was around the halls and in the men's rest room during the various recesses and on more than one occasion observed juror Cassidy talking to defendants Peters and wife, and also to Betty Hurst, one of the witnesses for defendants; that, following the afternoon recess on January 14th, affiant observed Cassidy talking to defendant Peters for some time; that, at one time during the trial, in the men's rest room, affiant heard Cassidy and one other juror talking, and that one of them said this was an insurance case.

Grace J. Green, wife of plaintiff Herbert D. Green, in her affidavit states that she was present in court during the time the instant case was being tried; that, on several occasions following recess, when the jury was being returned to the jury box, affiant observed juror Cassidy wink at defendant Peters in such a manner as to be noticeable to affiant sitting in the court room; that affiant noticed this to occur following the noon recess on Monday, January 17th.

Defendants' affidavits show substantially as follows:

William F. Peters, one of the defendants, in his affidavit states that at no time during the trial did he contact any member of the jury; that at no time were any winks or glances exchanged between affiant and

any of the jurors; that affiant has no personal acquaintance with any of the jurors trying the case.

Betty Hurst states in her affidavit that at no time during the trial did she have a conversation with juror Cassidy, nor did she observe Mr. and Mrs. Peters, or either of them, in conversation with Cassidy.

W. E. Cassidy states in his affidavit that he has read the affidavits presented by plaintiffs in reference to him; that he denies that he winked at defendant Peters or that he made any overture or friendly gesture towards anyone connected with the case; that he has known D. R. Cork for many years, that he met Mr. Cork on the street about January 19th, and talked to him, and that during the conversation some inquiry was made as to the case in which affiant was a juror, and affiant stated he was on the Peters case; that affiant made no reference to having saved any money for anyone or that he expected any reward for his jury service; that affiant did feel friendly toward the Peters family, due to his observation of them in court, and that, purely as a friendly gesture, he exchanged friendly greetings with Mr. Peters in the hall; that, after affiant had been discharged from jury duty, he learned that some offer of settlement had been made and that there was insurance involved, but that he had no information on this subject until after the case was over, except that he surmised that, because Connor was making no claim herein, his claim had been taken care of; that affiant has known both Earl Davis and Lester Edge, and has known for some time that they represent insurance companies; that affiant did not state to attorney Earl Davis that affiant, during the trial, knew the facts set out in the affidavit of Earl Davis; that affiant denies that he made any improper attempt to discuss the facts in the case with juror Duncan, denies that he told Duncan he had talked to the prosecutor about the case,

and denies that he talked to the other jurors about the merits of the case, prior to the commencement of their deliberations.

Jurors N. P. Nicholson, E. R. Swick, Linda Brady, and Amelia Law, and defendant Ethel Peters, in their affidavits state, in substance, that they did not hear juror Cassidy, either in or out of the jury room, state that he knew both parties to the action had insurance, and that he (Cassidy) wanted to decide in favor of the Peters because plaintiffs' insurance company had settled with Betty Hurst. It further appears from the affidavit of Nicholson that at no time did he see Cassidy wink at Mr. or Mrs. Peters, nor did he see Cassidy in conversation with Mr. or Mrs. Peters, or Betty Hurst.

Lester P. Edge, one of the attorneys for defendants, in his affidavit states that, on the day following the discharge of the jury in the Peters case, juror Cassidy called at his office and chatted with him about the case; that Cassidy at no time made any suggestion that he expected any compensation for his services as a juror; that, during this conversation, affiant told Cassidy that plaintiffs had been offered a substantial settlement, and that a settlement had been made with Betty Hurst.

The affidavit of Harvey E. Sarette is to the effect that he is associated with Lester P. Edge; that he was present during much of the conversation between Mr. Edge and juror Cassidy; that Mr. Edge's affidavit is affiant's version of what was said at that time.

After a hearing on the motion for new trial, the court took the matter under advisement. Briefs were submitted by respective counsel, and the trial court, after a full consideration of the matter, granted the motion, on the ground of misconduct of juror Cassidy, and filed a memorandum opinion wherein he stated:

"The granting of a new trial is largely a matter of discretion with the trial judge. In all my experience as a trial court I have never granted a new trial on the ground of misconduct of the jury. However, in this action I am convinced that under the law the bias, prejudice and misconduct of the juror Cassidy has been established by the record. I feel compelled to hold that the plaintiffs are entitled to a new trial and the motion will be granted."

The order was duly entered, and this appeal followed.

The record herein shows only one motion for new trial and one order granting the motion, and that is in the Worthie Matthews case. However, in view of the consolidation of the three cases, we have assumed the order entered in the Matthews case was intended to apply to all three cases.

Appellants claim the court erred in considering the affidavits of respondents in support of their motion for new trial, and in granting a new trial.

The question presented is whether or not the trial court abused its discretion in granting respondents a new trial because of misconduct of juror Cassidy.

Rem. Rev. Stat., § 348 [P. C. § 8512], provides:

"A juror may be examined by either party as a witness, if he be otherwise competent. If he be not so examined, he shall not communicate any private knowledge or information that he may have of the matter in controversy to his fellow jurors, nor be governed by the same in giving his verdict."

Trial courts have wide discretion in granting or refusing new trials, and the exercise of this discretion in granting a new trial will not be interfered with, except in situations where pure questions of law are involved, and this court will not interfere with the ruling of the trial court upon such a motion, unless it can be said from the record that the court abused its

discretion. *Danielson v. Carstens Packing Co.*, 115 Wash. 516, 197 Pac. 617; *Leach v. Erickson*, 161 Wash. 473, 297 Pac. 738; *Norland v. Peterson*, 169 Wash. 380, 13 P. (2d) 483; *Hanna v. Bodler*, 173 Wash. 460, 23 P. (2d) 396; *Corbaley v. Pierce County*, 192 Wash. 688, 74 P. (2d) 993. Ordinarily, a much stronger showing of an abuse of discretion is required to set aside an order granting a new trial, than one denying a new trial. *McKay v. General Acc. etc. Corp.*, 163 Wash. 92, 299 Pac. 987; *Mathisen v. Norton*, 187 Wash. 240, 60 P. (2d) 1.

 While it is undoubtedly the rule that affidavits of jurors cannot be received to impeach their verdict as to those matters which inhere in the verdict, except as showing that the verdict was reached by chance or lot, and that exception is statutory (*Maryland Casualty Co. v. Seattle Electric Co.*, 75 Wash. 430, 134 Pac. 1097), yet we have consistently held, since the decision in *State v. Parker*, 25 Wash. 405, 65 Pac. 776, that it is competent to show the facts in relation to the misconduct of a juror, but not to show the effect of such misconduct on other jurors, the latter question being one for the court to determine. *Maryland Casualty Co. v. Seattle Electric Co., supra; Lyberg v. Holz*, 145 Wash. 316, 259 Pac. 1087; *Hamilton v. Snyder*, 182 Wash. 688, 48 P. (2d) 245; *Mathisen v. Norton, supra.*

We have, in certain cases, used language implying that affidavits of jurors should be considered in so far as they state the facts showing misconduct, but not as showing the effect of such misconduct on the verdict, the latter being for the court to determine from the facts. This application of the rule seems to us to meet every purpose of public policy. It prevents the jury from divulging what consideration entered into its deliberations or controlled its action, thus impeaching

its own verdict, but it does not close what is often the only avenue to a showing of actual facts constituting misconduct. *Maryland Casualty Co. v. Seattle Electric Co., supra.*

We have not been able to find in our own decisions any attempt to definitely specify what things do and what do not inhere in the verdict. In *Keller v. Dodds*, 277 N. W. (Iowa) 467, we find, in a quotation from *Wright v. Illinois & M. Tel. Co.*, 20 Iowa 195, the following statement in regard to this matter: ·

" 'That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; *that he was unduly influenced by the statements or otherwise of his fellow jurors,* or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast'."

■ Appellants cite authorities from other jurisdictions to support their contention that the affidavits of respondents were improperly received and considered by the court herein, contending that the verdict cannot be impeached by evidence of statements after trial; that prejudice of jurors may not be shown by affidavit of respondents' attorney; that the verdict cannot be impeached by evidence of others as to statements of a juror after his discharge; that affidavits as to what was

said in the jury room are incompetent to impeach the verdict.

Regardless of the rule announced in other jurisdictions, we are satisfied that the contentions of appellants above set forth cannot be sustained under the statute or by the decisions of this court.

Rem. Rev. Stat., § 399 [P. C. § 8225], provides in part as follows:

"The former verdict or other decision may be vacated and a new trial granted, on the motion of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party:

"1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;

"2. Misconduct of prevailing party or jury . . ."

Rem. Rev. Stat., § 401 [P. C. § 8227], provides:

"The motion for a new trial shall state the grounds or causes for which a new trial is asked, and if made for any of the causes mentioned in the first, second, third, or fourth subdivision of section 399, the facts upon which it is based may be shown by affidavit."

We are of the opinion that, under § 401, *supra,* and the decisions of this court, the trial court may receive and consider the affidavit of any person, otherwise competent to make an affidavit, in support of or against a motion for new trial, in so far as such affidavit shows facts in relation to the misconduct of a juror, but may not consider such affidavit as to those things which inhere in the verdict. We are also of the opinion that, where such affidavits are based upon statements claimed to have been made by a juror, the evidence does not become incompetent because the statements of such juror were made after he had been discharged from further consideration of the case. In the cases of *Alexson v. Pierce County,* 186 Wash. 188, 57 P. (2d)

318, and *Mathisen v. Norton, supra,* we recognized the competency of evidence consisting of statements made by jurors after their discharge, and in the *Alexson* case, *supra,* we recognized the right of the trial court to receive and consider an affidavit made by the attorney for plaintiffs, showing statements made to him by a juror after she had been discharged. In *Hamilton v. Snyder, supra,* we held the motion for new trial was properly denied by the trial court, but we accepted without question the right to show by affidavits acts of misconduct in the jury room.

We are therefore of the opinion that the trial court, in the instant case, was justified in receiving and considering the affidavits of respondents, in so far as they set out facts purporting to show misconduct of the juror Cassidy, either in or out of the jury room, which occurred during the trial of the case, and which did not inhere in the verdict.

Appellants cite authorities from this state and other jurisdictions to sustain their contention that the facts purporting to show misconduct of juror Cassidy, as set forth in respondents' affidavits, were not sufficient to authorize the trial court in granting a new trial. We do not think the cases cited from this state support appellants' contention that the trial court erred in granting the motion for new trial in the instant case, but do support the well recognized rule, so often announced by this court, that, where there is a controverted question of fact presented to the trial court for its consideration, and the court either grants or denies a motion for new trial, such action by the trial court will not be disturbed by this court, unless we are satisfied there has been an abuse of discretion by the trial court. We refer to some of the cases cited, as illustrating what we have just said.

In the cases of *Lander v. Shannon,* 148 Wash. 93, 268

Pac. 145, and *Lloyd v. Mowery,* 158 Wash. 341, 290 Pac. 710, where the jury, during its deliberations, considered indemnity insurance, the trial court denied a motion for new trial, and we affirmed the decision of the lower court. But in those cases, there was conflict in the evidence, as shown by the affidavits, and the trial court, in the exercise of its discretion, determined that the verdict had not been successfully impeached.

In *Stockdale v. Renton,* 122 Wash. 172, 210 Pac. 360, the motion was based upon an affidavit stating that one of the jurors was seen in conversation with the principal witness for the defendant, and that this same juror, when the verdict was returned, rushed to the plaintiff and shook hands with her, and congratulated her upon her success. The court stated:

"These acts, if unexplained, would tend strongly to impeach the impartiality of the particular juror, but we find a sufficient explanation in a counter affidavit."

The trial court having found, on a disputed question of fact, that the motion for new trial should not be granted, we refused to disturb that finding.

Appellants cite the case of *State v. McChesney,* 114 Wash. 113, 194 Pac. 551, to sustain their contention that misconduct of a juror will not be considered as ground for a new trial, where the juror denies the misconduct. We do not think it was the intention of this court in the cited case to lay down a general rule that, where a juror is by affidavits charged with misconduct and by his affidavit denies such misconduct, there is no question of discretion left to the trial court, but the question becomes purely one of law. We think what was said in the cited case was meant to apply to the facts as presented by the affidavits filed in that case. Where the court is given a wide discretion in passing upon controverted facts, we must look to the evidence in each particular case and the entire record as pre-

sented to us, and upon the situation thus presented determine whether or not the trial court abused its discretion.

Our conclusion is borne out by the fact that, since the holding in the *McChesney* case, in the cases of *Alexson v. Pierce County,* and *Mathisen v. Norton, supra,* where the juror accused of misconduct denied such misconduct, we held that an issue of fact was presented. It might also be noted that the writer of the opinion in the *McChesney* case signed the majority opinion in the *Mathisen* case.

The right to trial by jury includes the right to an unbiased and unprejudiced jury, and a trial by a jury one or more of whose members is biased or prejudiced, is not a constitutional trial. *Alexson v. Pierce County, supra.* In the order granting the new trial in the instant case, we find the following statement:

"It appearing to the court from all of the records and files herein, including the affidavits submitted by the respective parties, that under the law the bias, prejudice and misconduct of the juror W. E. Cassidy, being juror number 8 on the trial of said cause, has been established, and by reason thereof the plaintiff did not have a fair and constitutional trial . . ."

While we appreciate the issues are more limited where a motion for new trial is granted upon one specific ground than they are where the order is a general one, still we think, even though the order is based upon one ground, upon conflicting affidavits as to the misconduct of a jury or jurors, that a question of fact is presented for the determination of the trial court, and that its action will not be disturbed by this court, unless we are convinced that the trial court abused its discretion. The trial judge in the instant case, who has had many years of trial experience, was convinced, as shown by his memorandum opinion filed

herein, that respondents did not have a fair trial because of the bias, prejudice, and misconduct of one of the jurors.

While it is true that, in the instant case, the evidence of misconduct, as shown by respondents' affidavits, was controverted, yet it will be noticed that juror Cassidy, in his affidavit, only partially denied the facts set out in the Cork affidavit, and his denial of the Duncan affidavit is only to the effect that he did not make any improper attempts to discuss the facts with juror Duncan, to deny that he told Duncan he had talked with the prosecutor about the case, and to deny he had talked to other jurors about the case.

After a consideration of this record, we are unable to say that the court abused its discretion in finding and determining that the juror Cassidy was biased and prejudiced and guilty of misconduct, and that, by reason thereof, respondents did not have a fair and constitutional trial.

The record shows that juror Cassidy made an independent investigation, during the trial, of certain facts pertaining to the case, either through the prosecutor or elsewhere, and, based upon such investigation, he determined that the car in which respondents were riding was covered by insurance, and that the company carrying the insurance on the Connor car had settled with Betty Hurst, an occupant of appellants' car, and concluded from this fact that the Peters were not to blame. There were also acts shown indicating a friendly relation between juror Cassidy and the Peters. While this fact in itself might not indicate or show misconduct, it was a fact to be considered by the court.

While we appreciate that this matter is here on a specific order, still it must be assumed the trial court observed these jurors and their actions in the court room, at least, and was therefore to some extent able

to pass upon the credibility of the jurors Duncan and Cassidy, and to determine what the probable effect on the jury was of juror Cassidy's misconduct, as shown by the affidavits. We think the acts herein last above set out did not inhere in the verdict, but, as was said in *Mathisen v. Norton, supra,* rendered the verdict wholly abortive.

The order granting the new trial in the consolidated cases is affirmed.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.

