[No. 36295.   Department One.   November 29, 1962.]

ARNIE GARDNER *et al., Appellants,* v. JOHN MALONE, *Respondent.**

*Reported in 376 P. (2d) 651.

J. P. *Tonkoff* (of *Tonkoff, Holst & Hopp*) and *John R. Lewis,* for appellants.

*Brethorst, Fowler, Bateman, Reed & McClure* (*J. Edwin Thonn,* of counsel), for respondent.

WEAVER, J.—Plaintiff, a minor, and several other boys, were passengers in an automobile driven by one Allan Edwards. The Edwards' automobile collided with an automobile driven by John Malone on the Steinmetz road, two miles northeast of Coulee City, Washington. Plaintiff was seriously injured.

By guardian ad litem, plaintiff commenced this action against defendant Malone for damages for personal injuries. After an extended trial, the jury returned a verdict for defendant. Plaintiff appeals from a judgment denying his motion for a new trial and dismissing his action.

This appeal is upon a short record pursuant to Rule on Appeal 34 (3), RCW Vol. 0. Plaintiff advances five assignments of error. Two assignments of error are not included in his ". . . concise statement of the points on which he intends to rely on the appeal" as required by the rule; hence, we cannot consider them. *Johnson Ser. Co. v. Roush,* 57 Wn. (2d) 80, 94, 355 P. (2d) 815 (1960); *Palmer v. Waterman Steamship Corp.,* 52 Wn. (2d) 604, 608, 328 P. (2d) 169 (1958); *Cominos v. Kalkanes,* 37 Wn. (2d) 843, 849, 226 P. (2d) 863 (1951).

Plaintiff's three remaining assignments of error are directed to alleged misconduct of the jury. Later in this

opinion, we will discuss each in particular, after first setting the screen upon which to project them.

Rule of Pleading, Practice and Procedure 59.04W, RCW Vol. 0, provides in part:

"The former verdict . . . may be vacated and a new trial granted, . . . on the motion of the party aggrieved for any one of the following causes materially affecting the substantial rights of such parties:

"1. . . .

"2. Misconduct of prevailing party or jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict to a finding on any question or questions submitted to the jury by the court, other and different from his own conclusions, and arrived at by a resort to the determination of chance or lot, such misconduct may be proved by the affidavits of one or more of the jurors; . . ."[1] (Same as RCW 4.76.020(2))

RCW 4.76.050 provides:

"The motion for a new trial shall state the grounds or causes for which a new trial is asked, and if made for any of the causes mentioned in RCW 4.76.020(1), (2), (3), or (4), the facts upon which it is based may be shown by affidavit."[2]

---

[1] The language of 59.04W (2) first appeared in Laws of Washington Territory, 1869, Ch. XXI, § 278(2), p. 67. It was reenacted by Laws of 1873, Ch. XXI, § 276(2), p. 70, and Laws of 1877, Ch. XXI, § 280, p. 56. The statute was codified as follows: Code of 1881, Ch. XXI, § 276(2); 2 Hill's Code (1891), § 400; Ballinger's Code (1897), § 5071(2); Rem. & Bal. Code (1910), § 399(2); Rem. Code (1915), § 399(2); Rem. Comp. Stat. (1922), § 399(2); Rem. Rev. Stat. (1932), § 399(2); RCW 4.76.020(2).

[2] This statute originated in Laws of Washington Territory, 1869, Ch. XXI, § 280, p. 68. It provided that when a motion for new trial is made ". . . the facts upon which it is based *shall* be made to appear by affidavit. . . ." Quaere: By *whose* affidavit? The statute was reenacted by Laws of 1873, Ch. XXI, § 278, p. 71, and Laws of 1877, Ch. XXI, § 282, p. 57. The Code of 1881, Ch. XXI, § 278, changed the word "shall" (italicized *supra*) to "may". This change appears in all subsequent codifications of the statute. 2 Hill's Code (1891), § 403; Ballinger's Code (1897), § 5074; Rem. & Bal. Code (1910) § 401; Rem. 1915 Code, § 401; Rem. Comp. Stat., § 401; Rem. Rev. Stat. (1932), § 401. See *Maryland Cas. Co. v. Seattle Elec. Co.*, 75 Wash. 430, 134 Pac. 1097 (1913) in which the court held that a motion for a new trial based upon an occurrence not in open court *must* be shown by affidavit.

In considering the effect of jurors' misconduct, it is important to bear in mind that there are two distinct problems: First, the *type of evidence* that may properly be received to establish the defect; and second, the *types of irregularities* or errors that may be shown.

Mischief[3] was introduced into the first problem by Lord Mansfield's opinion in *Vaise v. Delaval,* 1 T. R. 11, 99 Eng. Rep. 944 (1785). The opinion is short:

"Affidavit of a juror that the jury, having been divided, tossed up, and that the plaintiff had won, rejected.

"Upon a motion by Law for a rule to set aside a verdict, upon an affidavit of two jurors, who swore that the jury, being divided in their opinion, tossed up, and that the plaintiff's friends won, in which was cited, *Hale v. Cove,* 1 Stra. 642.

"Per Lord Mansfield, Ch. J. The Court cannot receive such an affidavit from any of the jurymen themselves, in all of whom such conduct is a very high misdemeanor: but in every such case the Court must derive their knowledge from some other source: such as from some person having seen the transaction through a window, or by some such other means.

"Rule refused."

The rule of the *Vaise* case, *supra,* has never been the law of this jurisdiction. Rule of Pleading, Practice and Procedure 59.04W(2) and RCW 4.76.050 (and their statutory predecessors as outlined in footnotes 1 and 2) specifically provide that a verdict determined by chance or lot may be challenged by the affidavit of a juror; and that the facts upon which a motion for new trial is based may be shown by affidavit, without excluding the affidavits of jurors, as did the Lord Mansfield rule.

In 1871, the predecessor of this court recognized that the 1869 statutes (see footnotes 1 and 2) were in derogation of the common law. The court held a "quotient verdict" invalid as "a composite fraud washed with a golden name", because it had been determined by chance or lot. Invalidity

[3]For a criticism of the rule, see 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2352, *et seq.*

was established by affidavits of jurors. *Goodman v. Cody*, 1 Wash. Terr. 329, 34 Am. Rep. 808 (1871).

In *State v. Parker*, 25 Wash. 405, 65 Pac. 776 (1901), it was shown by the affidavits of two jurors that one juror stated to the jury, during consideration of the case in the jury room, that he knew defendant was guilty and that he belonged to a "gang of toughs" implicated in a homicide.

■ In reversing the judgment and ordering a new trial, the court announced the rule that is dispositive of this case. The court said:

".  .  . In considering the affidavits filed, we entirely discard those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself. It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them the court will determine what was the probable effect upon the verdict. It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors. We do not see how any other conclusion can be reached than that they were highly prejudicial, including, as they did, the statement of alleged damaging facts concerning appellant *which had not been introduced in evidence upon the trial.*" p. 415 (Italics ours.)

This leads to a consideration of the second problem—the *type* of irregularities or errors that may be established by jurors' affidavits. Although affidavits may be filed in support of a motion for a new trial, they are subject to certain court-imposed limitations.

Our decisions are replete with the statement that "a juror's testimony or affidavit is not receivable to impeach his own verdict."[4] Of this, Professor Wigmore said:

".  .  . this rule of thumb is in itself neither strictly correct as a statement of the acknowledged law nor at all defensible upon any principle in this unqualified form. It is a mere shibboleth and has no intrinsic signification whatever. .  .  ." 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2345.

[4]This is subject, of course, to the statutory exception of a verdict determined by chance or lot. See cases cited, footnotes 5-11, *infra*.

In spite of this criticism, we believe a workable rule has evolved from our decisions. The crux of the problem is whether that to which the juror testifies (orally or by affidavit) in support of a motion for a new trial, inheres in the verdict. If it does, it may not be considered; if it does not, it may be considered by the court as outlined in *State v. Parker, supra.* One test is whether the facts alleged are linked to the juror's motive, intent, or belief, or describe their effect upon him; if so, the statements cannot be considered for they inhere in the verdict and impeach it. If they do not, it then becomes a matter of law for the trial court to decide the effect the proved misconduct could have had upon the jury. Another test is whether that to which the juror testifies can be rebutted by other testimony without probing a juror's mental processes.

The distinction between motive and irregularities may sometimes be shadowy and difficult to perceive, but

" . . . it is today universally agreed that on a motion to set aside a verdict and grant a new trial the verdict cannot be affected, either favorably or unfavorably, by the circumstances:

"that one or more jurors *misunderstood* the judge's *instruction*;[5]

"or were influenced by an *illegal paper* or by an *improper remark* of a fellow juror;[6]

"or *assented* because of *weariness* or illness or importunities;

"or *assented* under an *erroneous belief* that the judge would use clemency or have the legal right to vary the sentence;[7]

---

[5]*Ralton v. Sherwood Logging Co.,* 54 Wash. 254, 103 Pac. 28 (1909) (affidavit that juror did not consider certain instructions excluded); *State v. McKenzie,* 56 Wn. (2d) 897, 355 P. (2d) 834 (1960) (error to consider affidavit that a juror argued the law contrary to court's instructions).

[6]*O'Brien v. Seattle,* 52 Wn. (2d) 543, 327 P. (2d) 433 (1958) (error to question whether conversation of a juror with bailiff influenced verdict); *Johnston v. Sound Transfer Co.,* 53 Wn. (2d) 630, 335 P. (2d) 598 (1959) (affidavits of jurors concerning statements made by other jurors as to their experience horseback riding excluded).

[7]*State v. Aker,* 54 Wash. 342, 103 Pac. 420 (1909) (juror's affidavit

"or had been *influenced* by *inadmissible evidence;*[8]

"or had decided upon grounds which rendered *newly discovered evidence immaterial;*

"or had *omitted to consider* important evidence or issues;[9]

"or had *miscalculated accounts* by errors of fact or of law;[10]

"or had by any other *motive or belief been led to their decision.*"[11]  8 Wigmore, Evidence (McNaughton Rev. 1961) § 2349, p. 681.  (Footnotes in the above quotation furnished by the court.)

On the other hand, if the juror's affidavit establishes misconduct of the jury by facts or circumstances that do not inhere in the verdict, the facts must be considered. *Dibley v. Peters,* 200 Wash. 100, 93 P. (2d) 720 (1939) and cases cited. See *State v. Rose,* 43 Wn. (2d) 553, 262 P. (2d) 194 (1953).

In *Maryland Cas. Co. v. Seattle Elec. Co.,* 75 Wash. 430, 134 Pac. 1097 (1913), the court said:

". . . Many courts make no distinctions between affidavits of jurors as to the *fact* of misconduct and affidavits as to the *effect* of that misconduct upon their deliberation, holding that both are things which inhere in the verdict and that jurors' affidavits or statements as to either the fact or its effect are inadmissible because tending to impeach the verdict. [Citing authorities] . . . In this state we have applied the rule less drastically. We have, in certain cases, used language implying that affidavits of jurors should be considered in so far as they stated the facts showing misconduct, but not as showing the effect of such misconduct on the verdict, the latter being for the court to determine from the facts.

". . .

---

that he assented to verdict because of intimidation excluded); *State v. Knapp,* 194 Wash. 286, 77 P. (2d) 985 (1938) (reason for imposing death sentence excluded).

[8]*State v. Burke,* 124 Wash. 632, 215 Pac. 31 (1923).

[9]*Henslin v. Pratt,* 119 Wash. 443, 205 Pac. 867 (1922).

[10]*Marvin v. Yates,* 26 Wash. 50, 66 Pac. 131 (1901).

[11]*Smith v. American Mail Line, Ltd.,* 58 Wn. (2d) 361, 363 P. (2d) 133 (1961).

"This application of the rule seems to us to meet every purpose of public policy. It prevents the jury from divulging what considerations entered into its deliberations or controlled its action, thus impeaching its own verdict; but it does not close what is often the only avenue to a showing of actual facts constituting misconduct. . . ."

*Lyberg v. Holz,* 145 Wash. 316, 259 Pac. 1087 (1927), *Hamilton v. Snyder,* 182 Wash. 688, 48 P. (2d) 245 (1935), *State v. Knapp,* 194 Wash. 286, 77 P. (2d) 985 (1938) and *O'Brien v. Seattle,* 52 Wn. (2d) 543, 327 P. (2d) 433 (1958) applied the same rule. They distinguish between testimony as to the *fact* of misconduct and testimony as to the *effect* of misconduct.

We turn to the facts of the instant case.

Numerous affidavits and sworn statements in the form of depositions were filed at the time the court considered plaintiff's motion for a new trial.

Eliminating allegations that are obviously hearsay (*Aliverti v. Walla Walla,* 162 Wash. 487, 298 Pac. 698 (1931) and cases cited), and allegations of facts that we believe inhere in the verdict, three situations remain which must be considered.

*First*: Juror Harmon alleged in an affidavit:

"Oscar McCoy, Juror No. 12, on examination of Plaintiff's counsel during voir dire, stated that he was not acquainted with nor did he know the defendant, John Malone. During the course of the jury's deliberations, he stated in the presence of all the jurors that he 'had traded wheat and stock with Malone and was acquainted and knew the defendant Malone.'"

The court subpoenaed juror McCoy to appear at the hearing of plaintiff's motion for a new trial. Under oath, juror McCoy denied having made the statement attributed to him.

Inherent in the trial court's order denying the motion for a new trial is a finding that juror McCoy did not make the statement that he knew defendant Malone. We accept this finding.

*Second*: Juror Harmon alleged in his affidavit that, during the course of the jury's deliberations, juror Jensen stated that he and jurors Hough and Pace had visited the scene of the accident on the Steinmetz road. Jurors Jensen and Pace admitted having driven over the road with juror Hough. Jensen stated in his affidavit:

" . . . I thought that seeing where the accident occurred would help me follow the map. . . . "

Three other jurors admitted that they knew jurors Jensen, Hough, and Pace had visited the scene of the accident.

It is undisputed that in order to traverse the Steinmetz road, it was necessary for the three jurors to deviate from the usual route between their home and the courthouse. Thus, their visit was planned and intentional; it was neither casual nor accidental. There is evidence in the record before us that certain physical characteristics of the road at the scene of the accident had been changed by the county prior to the trial of this case.

In *Brennan v. Seattle,* 46 Wash. 427, 90 Pac. 434 (1907), a juror disclosed in open court that he had inadvertently passed the scene of the accident the evening before on his way home. Since the trial court instructed the jury to disregard the juror's remarks and the fact of his visit, it was not prejudicial error.

In *Woodruff v. Ewald,* 127 Wash. 61, 219 Pac. 851 (1923), the trial court granted a new trial because the entire jury, on its way to the courthouse from its evening meal, deviated about two city blocks in order to view the scene of the accident. This court affirmed the order granting a new trial, saying:

" . . . We are unable to so decide [the view was not prejudicial] in the light of the record before us, in view of the fact that the scene of the accident had in some substantial manner changed at the time of the jury's visit [as in the instant case]; that the visit was wholly unauthorized by the court [as in the instant case]; that the visit was made manifestly for the purpose of gaining more exact knowledge of the physical surroundings of the scene of the accident, at least on the part of some of the jurors [as juror Jensen

stated in the instant case]; and that the visit was without the consent or knowledge of the plaintiff or her counsel, thus depriving them of all opportunity to meet or counteract in any manner, either by argument, explanatory evidence or requested cautionary instructions, any impressions which the physical surroundings of the scene of the accident at the time of the jury's visit might have erroneously suggested." (pp. 63-64)

In the *Woodruff* case, *supra*, the entire jury had equal knowledge; in the instant case, only three jurors had superior knowledge as a result of their view of the scene of the accident.

*Third*: Juror Harmon alleged in his affidavit:

". . . that during the course of the deliberations, Arthur Fiess, Juror No. 9, stated: 'If we give a judgment for $100,000.00 and the other boys' fathers will sue Malone, and they will take his whole wheat ranch.' Oscar C. McCoy, Juror No. 12, stated during the deliberations that he was in agreement with Juror Fiess, and stated: 'You bet, that is exactly what will happen.' Albert Jeske, Juror No. 3, stated during the deliberations of the jury, 'If Gardner [plaintiff] gets a judgment against Malone, these other boys will sue him, and Fiess is right, they'll take Malone's wheat ranch.' Juror No. 4, Doris E. Pace, chimed in and said 'We don't want anything like that to happen.' "

Juror Fiess testified by deposition. He was asked a question which included the quotation from juror Harmon's affidavit, quoted *supra*. He replied:

"That's exactly it. There was so much sympathy put on the other side that eventually this was mentioned."

In her deposition, juror Pace, having been asked the same question, testified:

"I think that question was discussed, but I can't remember who discussed it. I think it was discussed between all the jurors, but not exactly in those words, and I don't think the amount of money was mentioned."

In her affidavit, juror Iola May McCoy stated:

"That during the deliberations of the jury the topic was brought up that if a verdict was given to the Gardner boy— the plaintiff—it would put defendant Malone in a bad

financial position because the other four boys in the car would sue Malone, the defendant."

An examination of the affidavits and depositions of jurors, other than those we have identified, puts beyond peradventure the conclusion that the subject-matter, as outlined by juror Harmon, was discussed and considered by the jury during its deliberations.

■ The possibility of other lawsuits against defendant Malone was not a matter to be weighed by the jury in its determination of the controversy between plaintiff and defendant.

■ Trial courts have wide discretion in granting or refusing new trials, and, ordinarily, we will not interfere with the exercise of that discretion except in situations where questions of law are involved; however,

" . . . a much stronger showing of an abuse of discretion is required to set aside an order granting a new trial, than one *denying* a new trial." (Italics ours.) *Dibley v. Peters,* 200 Wash. 100, 109, 93 P. (2d) 720 (1939) and cases cited.

■ *Lyberg v. Holz,* 145 Wash. 316, 259 Pac. 1087 (1927) was an action to recover damages for wrongful death. This court reversed the trial court's denial of a new trial when it appeared the jury considered that defendant might be charged with manslaughter if found guilty of negligence, and that a settlement had been refused in order to "lay the foundation for a criminal charge" against defendant.

This court said, quoting from a Texas decision:

" 'The determinative rules, or principles of law are plain and well established. If, upon a consideration of the whole of the pertinent record, it is *reasonably doubtful* whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of appellate courts. . . . A proper corollary, is that, when misconduct is once shown, and there is *reasonable doubt* as to its effect, that doubt must be resolved against the verdict. . . . ' " (p. 320) (Italics ours.)

The unauthorized view of the scene of the accident, combined with the jury's consideration of the effect of other possible lawsuits against the defendant, is sufficient misconduct to establish a "reasonable doubt" that plaintiff was denied a fair trial.

The judgment of dismissal is reversed and the case remanded with directions to grant plaintiff's motion for a new trial.

Costs shall abide the final determination of the cause. Rule on Appeal 55 (b) (1).

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.

March 22, 1963. Petition for rehearing denied.