## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>LUIS GERARDO GOMEZ-ESTEBAN,<br><br>Appellant. | No.  48331-9-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — A jury found Luis G. Gomez-Esteban guilty of two counts of second degree child molestation and one count of communicating with a minor for immoral purposes.  Gomez-Esteban appeals, arguing that he was denied his right to a unanimous jury verdict.  He also argues that the lack of specificity in the jury verdicts denied him his right to appeal.  In his Statement of Additional Grounds (SAG)[1], Gomez-Esteban argues (1) insufficiency of the evidence, (2) ineffective assistance of counsel, and (3) improper influencing of the jury by the judge.  The jury was properly instructed as to jury unanimity; therefore Gomez-Esteban's claim fails.  The remainder of Gomez-Esteban's claims lack merit.  Accordingly, we affirm.

### FACTS

The State charged Gomez-Esteban with three counts of second degree child molestation and one count of communication with a minor for immoral purposes.  Before trial, Gomez-Esteban

---

[1] RAP 10.10.

made a motion for new counsel. Gomez-Esteban alleged that he had informed his current counsel that he wanted to go to trial but counsel was not listening to him. Gomez-Esteban's counsel informed the court that the case was currently set to go to trial. The trial court denied Gomez-Esteban's motion for new counsel.

At the jury trial, A.B.[2] testified that she met Gomez-Esteban when he was working in her parents' restaurant. A.B. would usually go to work at the restaurant with her mother on Saturdays and Sundays. While she was at the restaurant, Gomez-Esteban would make "heart signs" to her with his hands. 1 Report of Proceedings (RP) at 31. They also began exchanging text messages. On one occasion, A.B.'s mother observed a hickey on A.B.'s neck. At the time, A.B. was 12 years old and Gomez-Esteban was 24.

A.B. testified that, on August 25, 2013, she met Gomez-Esteban in the men's bathroom at the restaurant. Gomez-Esteban pulled down her pants and moved his penis up and down between her butt cheeks. A.B. testified that this had also happened on two other occasions, although she could not remember the precise dates. Later that day, A.B.'s mother found A.B. and Gomez-Esteban talking in the storage room in the back of the restaurant. A.B.'s father contacted the police.

The next day A.B. was taken to the child advocacy center to have a sexual assault examination done. At trial, the sexual assault nurse testified that A.B.'s genital exam was normal.

The trial court gave the jury the following instruction regarding unanimity:

> The State alleges that the defendant committed acts of Child Molestation in the Second Degree on multiple occasions. To convict the defendant on any count of Child Molestation in the Second Degree, one particular act of Child Molestation

---

[2] We use initials to protect witness's identity. General Order 2011-1 of Division II, *In Re The Use Of Initials or Pseudonyms For Child Witnesses in Sex Crime Cases*, available at: http://www.courts.wa.gov/appellate_trial_courts/.

in the Second Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Child Molestation in the Second Degree.

Clerk's Papers (CP) at 328 (Inst. No. 7). And the "to convict" instructions for the three counts of child molestation required the jury to find "a separate and distinct incident" than alleged in the other counts. CP at 332-34 (Inst. Nos. 11, 12, 13).

During deliberations, the jury sent two questions to the trial court. First, the jury sent the following question:

Are the three counts referring to the three bathroom incidents, or do the hickey, kissing, and one bathroom incident count as three?

CP at 342. The trial court told the jury to re-read the jury instructions and to continue deliberating. Second, the jury asked for clarification on the jury unanimity instruction:

Clarification on Instruction #7: If we do not unanimously agree on one count, then we enter a judgment of not guilty for that count, correct?

CP at 341. The trial court responded:

The court has spoken with the attorneys. The court is directing the jury to re-read all the court's instructions and continue to deliberate.

CP at 341 (emphasis in original).

The jury found Gomez-Esteban not guilty on the first count of second degree child molestation but guilty on all the remaining counts. Gomez-Esteban appeals.

## ANALYSIS

Gomez-Esteban argues that his convictions must be reversed because his right to unanimous jury verdicts was violated. He argues that the jury's questions to the trial court demonstrates that they were confused, and therefore, the jury verdicts were not unanimous. Here,

the jury was properly instructed as to the requirements of unanimity. And the jury's questions do not undermine the ultimate jury verdict. Additionally, Gomez-Esteban's argument that the lack of specificity in the jury verdicts denied him his right to appeal and his SAG arguments lack merit. We affirm.

## I. JURY UNANIMITY

"In Washington, a defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed." *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). When the evidence indicates that several criminal acts have been committed, but the defendant is charged with only one count, the jury must either be instructed that they must unanimously agree on the underlying act or the State must elect the act upon which it will rely. *Petrich*, 101 Wn.2d at 572. In addition, "where multiple identical counts are alleged to have occurred within the same charging period, the trial court must instruct the jury 'that they are to find separate and distinct acts for each count.'" *State v. Borsheim*, 140 Wn. App. 357, 367, 165 P.3d 417 (2007) (internal quotations omitted) (quoting *State v. Hayes*, 81 Wn. App. 425, 431, 914 P.2d 788 (1996). Here, the jury instructions on unanimity clearly satisfied both of these requirements.

Jury Instruction No. 7 was based on Washington Pattern Jury Instruction 4.25[3] which was approved as complying with *Petrich*. *State v. Moultrie*, 143 Wn. App. 387, 393-94, 177 P.3d 776 (2008). And each "to convict" instruction properly designated the act in each count as "separate

---

[3] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.25, at 117 (4th ed. 2016).

and distinct" from the acts in the other counts. CP at 332-34. Here, the jury instructions were legally correct. However, Gomez-Esteban appears to argue that the jury's questions demonstrate that they were confused by the instructions; therefore the jury did not return a unanimous verdict.[4]

Our Supreme Court has been clear that jury questions cannot impeach the jury's ultimate verdict:

> The individual or collective thought processes leading to a verdict "inhere in the verdict" and cannot be used to impeach a jury verdict. *State v. Crowell,* 92 Wn.2d 143, 594 P.2d 905 (1979); *State v. McKenzie,* 56 Wn.2d 897, 355 P.2d 834 (1960); *Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962). Here, the jury's question does not create an inference that the entire jury was confused, or that any confusion was not clarified before a final verdict was reached. "[Q]uestions from the jury are not final determinations, and the decision of the jury is contained exclusively in the verdict." *State v. Miller,* 40 Wn.App. 483, 489, 698 P.2d 1123 (citing *State v. Bockman,* 37 Wn.App. 474, 493, 682 P.2d 925, *review denied,* 102 Wash.2d 1002 (1984)), *review denied,* 104 Wash.2d 1010 (1985).

*State v. Ng*, 110 Wn.2d 32, 43, 750 P.2d 632 (1988). Here, the jury returned four clear verdicts based on legally correct jury instructions. Gomez-Esteban was not denied his right to unanimous jury verdicts and we affirm.

## II. RIGHT TO APPEAL

Gomez-Esteban also argues that the lack of specificity in the jury verdicts has denied him his right to challenge the sufficiency of the evidence supporting the jury verdicts on appeal. Br.

---

[4] To the extent Gomez-Esteban is arguing that, because there were multiple acts alleged and the record does not indicate which of the acts the jury ultimately relied on to reach their verdicts, there was no jury unanimity, this argument lacks merit. Br. of Appellant at 20-23. This argument undermines the reasoning supporting *Petrich* entirely. *Petrich* allows *either* the State to elect an act or to instruct the jury as to the unanimity requirement for the act or acts that were proven beyond a reasonable doubt for a particular count. 101 Wn.2d at 572. Based on Gomez-Esteban's argument, an instruction would be insufficient without special verdict forms requiring the jury to specify the act they relied upon to reach their verdict. There is no authority for such a proposition.

of Appellant at 23-25. He relies on *State v. Heaven*, 127 Wn. App. 156, 110 P.3d 835 (2005) to support his argument, but *Heaven* is not applicable here. In *Heaven*, the defendant was charged with three counts of child molestation based on numerous acts. 127 Wn. App. at 159-60. The defendant was acquitted of two counts but the jury was unable to reach a verdict on the third count. *Heaven*, 127 Wn. App. at 160. Division I of this court held that double jeopardy barred retrial on the third count because, without election by the prosecutor or special verdict forms, it was possible that, at the second trial, the defendant would be convicted of offenses he was already acquitted in the first trial. *Heaven*, 127 Wn. App. at 162.

But here, the issue is not one of double jeopardy. Gomez-Esteban has cited no authority for the proposition that a defendant is denied his right to appeal when the jury has been properly instructed as to jury unanimity but does not return special verdicts designating which acts it relied on in reaching its verdicts. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Accordingly, we reject Gomez-Esteban's assertion that he has been denied his right to appeal.

III. STATEMENT OF ADDITIONAL GROUNDS

Gomez-Esteban makes three additional arguments in his SAG. First, he argues that the State failed to present sufficient evidence to support his convictions because the sexual assault nurse testified that there was no evidence of sexual intercourse between A.B. and Gomez-Esteban. Second, he argues that he received ineffective assistance of counsel. And third, he argues that the judge improperly influenced the jury's verdict. All of Gomez-Esteban's SAG claims lack merit.

First, Gomez-Esteban argues that there was insufficient evidence to support the verdicts because the sexual assault nurse testified that there was no evidence of sexual intercourse. But child molestation in the second degree requires proof of "sexual contact" not sexual intercourse. RCW 9A.44.086. "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Accordingly, the sexual assault nurse's testimony that there was no evidence of sexual intercourse is irrelevant.

Second, Gomez-Esteban argues that he received ineffective assistance of counsel because (1) the trial court denied his motion for new counsel and (2) his counsel ignored him during trial. "To justify appointment of new counsel, a defendant 'must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'" *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004) (quoting *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997)). At best, Gomez-Esteban appeared dissatisfied with the amount of time it was taking to get to trial, but counsel confirmed that a trial date had been set. Accordingly, Gomez-Esteban did not present any grounds for granting substitution of counsel. His remaining allegations that counsel ignored him during trial rely on facts outside the record which may not be considered on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Third, Gomez-Esteban asserts that the trial court "unfairly pressured" the jury to find him guilty. SAG at 2. Gomez-Esteban contends that the jury found him not guilty but was told to reconsider by the judge three or four times until they ultimately returned guilty verdicts. This contention is simply unsupported by the record. Based on the record, the jury had contact with the

judge only twice—the two jury questions.  And neither jury question indicated that the jury had reached a not guilty verdict.  Accordingly, Gomez-Esteban's allegation of improper influence by the trial court lacks merit.

The jury was properly instructed as to jury unanimity; therefore Gomez-Esteban's claim fails.  The remainder of Gomez-Esteban's claims lack merit.  Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

JOHANSON, J.