[No. 31420. Department One. February 23, 1951.]

THE STATE OF WASHINGTON, *Respondent,* v. ROY
MOORE, *Appellant.*[1]

*Frederick B. Cohen* and *John E. Bowen,* for appellant.

*James Munro* and *Roy A. Holland,* for respondent.

BEALS, J.—Dallas Reed Schmidt and Roy Moore (named in the information as Ray Moore), were, by information filed by the prosecuting attorney of Kitsap county, August 30, 1949, jointly charged with the crime of burglary in the second degree. The information alleged that the defendants

". . . with intent to commit a crime therein, wilfully, unlawfully and feloniously did break and enter the building of Pacific Cleaners and Furriers, situated at 606 North Montgomery Street, Bremerton, County of Kitsap, State of Washington, the same being a building wherein property was then and there kept for sale, use and deposit,"

contrary to the statutes in such cases made and provided, etc.

[1] Reported in 228 P. (2d) 137.

Apparently the defendant Schmidt entered a plea of guilty. The trial of defendant Moore opened March 21, 1950, the jury returning a verdict of guilty.

From a judgment adjudging Moore guilty as charged, and imposing a sentence of imprisonment for a maximum term of fifteen years, the defendant has appealed, making eleven assignments of error. We find it necessary to discuss only the last assignment, which reads as follows:

"The trial court erred in denying appellant's Motion for a New Trial."

Two of the grounds upon which appellant based his motion for new trial are stated in the motion, as follows:

"1. That the jury has received evidence and paper documents not allowed by the court.
"2. Misconduct of the jury."

From the evidence, it appeared that about midnight of August 27, 1949, an establishment known as "Pacific Cleaners," located at the corner of Sixth and Montgomery streets, in the city of Bremerton, was burglarized. Witnesses testified that two men were seen in the building. Police officers appeared and arrested the defendant Schmidt, just as he was leaving the building, and within a short time thereafter, appellant was arrested.

It appeared that the safe in the premises had been broken open and money taken therefrom; that locked closets had been entered and fur coats taken therefrom were found outside an open window, other coats taken from the premises having been discovered on the margin of an adjoining parking area. A number of footprints were found outside of the building, and one alleged heel print on the floor of the establishment.

Roy T. Mosely, called as a witness by the state, testified that he had for three years acted as "Identification Officer of the Bremerton Police" and that, his duties consisted, *inter alia,* of identification of evidence found at the scenes of crimes. The witness then testified that he had visited the scene of the burglary and discovered a number of footprints, both on the floor of the building and on adjoining

ground. The witness testified that he saw appellant in the county jail soon after the burglary and examined his shoes (which were evidently soon delivered to the prosecuting attorney). He further testified that he had previously studied the footprints for the purpose of comparing them with certain shoes; that he compared the prints with appellant's shoes, and photographed some of the heel prints which he discovered.

Counsel for the state offered in evidence one of the shoes, simply referring to it as "the shoe," and stating that "the shoe" was one of those which appellant had been wearing. The shoe was admitted in evidence as state's exhibit "B," and is a shoe for a right foot.

A photograph (together with an enlargement thereof), of what the witness Mosely testified showed a heel print on a piece of carbon paper found on the floor of the cleaning shop, was also offered by the state and received in evidence as exhibit "G," counsel for the state contending that the marks on the paper showed a heel print. The witness also testified that the heel prints were not prints left by appellant's codefendant Schmidt's heels.

A photograph of the heel print which the witness Mosely discovered in the ground outside of the building, was also admitted in evidence over appellant's objection, as state's exhibit "E."

The witness Mosely also testified that he made an impression in sand from the heel of "this shoe" (evidently referring to the shoe which had been admitted in evidence as state's exhibit "B"). The witness testified that, after making the impression, as an impression would have been left by a man wearing a shoe stepping on the sand, he then photographed the impression, identifying a print marked as state's exhibit "D" as the photograph of the impression of the heel which the witness had made in the sand, and testifying that exhibit "D" showed a print the same size as the heel of the shoe from which the impression was made (exhibit "C" being an enlarged photograph from the same negative).

Counsel, both for the state and for appellant, and the witness, frequently referred to "the shoe," or "the shoes," without further identification. Counsel for appellant renewed his objection to the admission of the photographs, the objections having been overruled by the trial court.

A portion of the photograph, exhibit "D," showing the print of the heel made from one of the shoes which the witness testified were worn by appellant, consists of a legend (which had been placed just under the heel print when the photograph was made) reading as follows:

"SAMPLE:
    PHOTO OF    LEFT
      MOORES    SHOE
"R.T.M."

the initials being those of the witness Mosely. Only a portion of this legend appears upon exhibit "C" (the enlarged print of exhibit "D"), that photograph merely showing the letters

"AMPLE:
    OF        LEFT
            HOE."

No left shoe was offered as evidence in the case.

The exhibits above referred to were stamped (evidently by the clerk of the court)

"MARKED FOR IDENTIFICATION
    STATE EX. ........................................."

and upon the blank line was written the letter identifying the exhibits. Below these marks for identification appears the stamp:

"FILED
In OPEN COURT
MAR 21 1950
REINA OSBURN, Clerk
By [*Signed*] *R. R. Staub*
        Deputy."

No exhibit bears any mark or stamp showing that it was admitted in evidence by the court. Possibly the file mark was intended to indicate that it was so received. The better practice is to stamp an exhibit showing that it was received

in evidence and designate it by letter or number as an exhibit for the party who offered it.

The statement of facts clearly discloses that each exhibit was, in fact, received in evidence, and in the certificate to the statement of facts, the trial court certified "that State's Exhibits 'A' to 'K', inclusive" were all admitted in evidence by the court, save the state's exhibit "A," with which we are not concerned.

After plaintiff and defendant had rested, the trial court instructed the jury and counsel presented their arguments. The jury retired to consider their verdict at thirty-five minutes after eight o'clock p. m., and returned a verdict of "guilty" at fifty minutes after nine o'clock the same evening.

Appellant seasonably moved for arrest of judgment or, in the alternative, for a new trial, the first two grounds alleged being hereinbefore quoted. In support of his motion for a new trial, appellant filed the affidavits of five of the jurors who heard the case.

The affidavits of three of these jurors simply state that, after the jury had retired, a magnifying glass was brought into the jury room and that some of the jurors used the magnifying glass while the jury was examining the evidence.

The affidavit of juror Charles G. Moe states that, while the jury was deliberating, the jurors agreed they would attempt to procure a magnifying glass to enable them to examine the photographs which had been admitted in evidence more closely; that the affiant called the bailiff, asking if it was possible to procure a magnifying glass, which the bailiff procured and delivered to the foreman of the jury. Mr. Moe, in his affidavit, also stated that the jurors noticed that a photograph (exhibit "D") admitted in evidence was marked as having been taken from the imprint of the left shoe, but that the right shoe had been turned over to the jury as an exhibit in the case; that the juror affiant further asked the bailiff to bring the left shoe to the jury and that, when the bailiff delivered the magnifying glass to the foreman, the bailiff stated "that the left shoe had been taken

back to Bremerton by the Police Department and was not available." The affidavit continues by stating that the jury examined the photographs carefully with the magnifying glass, and also examined the heel of the right shoe which had been admitted in evidence and "attempted to make such comparisons as possible."

The juror, Mary E. Scandrette, in her affidavit, stated that the bailiff had been requested to furnish a magnifying glass and—

"That while the Bailiff was gone discrepancy was noticed in the shoe and the pictures of the shoe in that the pictures stated that they were of the left shoe and the shoe in the Jury Room was the right shoe. That she also mentioned to the Foreman, Mr. O'Keefe, that he should be the one to request anything from the Bailiff. That Mr. O'Keefe went to the door and asked the Bailiff to bring the left shoe to the Jury Room. That the Bailiff left and later returned to say that the left shoe was not available and that the Judge said to disregard the writing on the pictures. That the bailiff further stated that the left shoe had been returned to the City Hall."

The juror also stated that the magnifying glass had been used to examine the exhibits.

The affidavits of the jurors are attached to the statement of facts and are referred to and identified as affidavits "in support of the defendant's Motion for New Trial," in the certificate attached to the statement of facts signed by the trial judge.

The affidavits of the five jurors above referred to are nowise controverted and we accept them as true. *Lyberg v. Holz*, 145 Wash. 316, 259 Pac. 1087.

Rem. Rev. Stat., § 11052, reads as follows:

"Every court of record shall have the power to appoint a crier and as many bailiffs as may be necessary for the orderly and expeditious dispatch of the business."

Rem. Rev. Stat., § 349, reads as follows:

"After hearing the charge, the jury may either decide in the jury-box or retire for deliberation. If they retire they must be kept together in a room provided for them, or some other convenient place, under the charge of one or more

officers, until they agree upon their verdict, or are discharged by the court. The officer shall, to the best of his ability, keep the jury thus separate from other persons, without drink, except water, and without food, except ordered by the court. He must not suffer any communication to be made to them, nor make any himself, unless by order of the court, except to ask them if they have agreed upon their verdict, and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed upon."

The state's exhibit "B" was a right shoe, identified as having been worn by appellant. The state's exhibit "D," *supra*, purported to be a photograph of an imprint made by pressing the heel of one of appellant's shoes in sand. The photograph of the impression, as above stated, was plainly marked as being taken from appellant's left shoe, while only his right shoe had been introduced in evidence and was in the possession of the jury for examination after it retired to consider its verdict. Whether or not the written legend, which formed a part of photograph exhibit "D," was correct or incorrect is not important. While the print of the heel of the shoe may have been made by pressing the right shoe in the sand, the jury was bound to accept the evidence as introduced on the trial, unless or until the record had been corrected by appropriate proceedings before the court, counsel and appellant.

Evidently the jurors were puzzled by the situation above referred to and called the bailiff and stated to him their wishes. The statement of facts discloses nothing save as hereinabove stated. Whether or not the bailiff reported the jury's request to the trial judge, we do not know. It is evident that the bailiff was not well informed concerning his duties, and what the law permitted him to do or what the statute forbade him to do.

Juror Mary E. Scandrette stated in her affidavit above quoted that the bailiff informed the jury "that the left shoe was not available and that the Judge said to disregard the writing on the pictures," and also that the left shoe had been returned to the city hall.

Juror Charles G. Moe stated in his affidavit that the bailiff informed the jury "that the left shoe had been taken back to Bremerton by the Police Department and was not available."

The bailiff had no authority whatsoever to make any such statements to the jury, regardless of whether the statements were true or false. The statutory duties of a bailiff in charge of a jury are clearly defined by the section of the statute above quoted.

A jury desiring further instructions, or wishing to be informed upon any matter, may use the bailiff as their messenger to convey any request which they desire to make, to the judge who presided over the trial, who may recall the jury to the courtroom and, in the presence of counsel for all parties, and the defendant (if the cause be a criminal prosecution) hear the request of the jury and give them necessary instructions or admonitions. The record before us discloses nothing, save as above set forth.

The general rule is stated as follows:

"The courts are zealous in protecting litigants against any improper influence exerted by court officials over the jury impaneled to try the case. The officer having charge of the jury should not make any communication to the jury except to ask them whether they have agreed upon a verdict." 53 Am. Jur. 651, § 905.

In the case of *State v. Wroth,* 15 Wash. 621, 47 Pac. 106, this court reversed a judgment finding the defendant guilty of manslaughter and imposing a sentence of imprisonment in the penitentiary, it appearing from the record that, after the jury had been instructed and had retired in custody of the bailiff to consider their verdict, the jury " 'through their bailiff, requested to see the judge,' " whereupon the judge went to the jury room and stood in the doorway to the jury room, the door being partly opened. The " 'judge returned and informed the counsel for the defendant and state that the jury, through its foreman, had requested that the said judge repeat to them the instruction given on reasonable doubt.' " In the course of the opinion, this court said:

"It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place, when he has no lawful right to be present. His right in this respect goes to the very substance of trial by jury.

"Aside from the rights of the parties, public policy will not sanction any departure from the rule which requires that all such communications shall be public and in the presence of the parties or their counsel."

In *State v. Hyde,* 20 Wash. 234, 55 Pac. 49, this court quoted *State v. Wroth, supra,* and reversed a judgment entered pursuant to a verdict of the jury, declaring the appellant to have been guilty of a crime, because of certain comments upon the evidence made by the trial court in the presence of the jury which had been recalled at the jurors' request after they had retired to consider their verdict (counsel for both parties, and the defendant also, being present).

The following authorities are of interest in connection with the question presented: *People v. Chambers,* 279 Mich. 73, 271 N. W. 556; *Ridley v. State,* 5 Okla. Crim. 522, 115 Pac. 628; *Lowrey v. State,* 87 Okla. Crim. 313, 197 P. (2d) 637.

Portions of the record above referred to, beyond question, disclose reversible error entitling appellant to a new trial. Whether or not the delivery of a magnifying glass to the jury by the bailiff pursuant to the jury's request, if standing alone, would constitute reversible error, we do not decide. Of course, such a request by the jury should have been by the bailiff conveyed to the judge for appropriate instructions.

In the case of *State v. Burke,* 124 Wash. 632, 215 Pac. 31, in which the defendant was convicted of burglary, it appeared that, after the jury had retired, the bailiff in charge delivered to the jury a magnifying glass, which was not an exhibit in the case, without the knowledge of, or instructions from, the

court. Under the circumstances disclosed by the record, this court held that, the delivery to the jury of the magnifying glass and the use to which the glass was put by the jury constituted reversible error.

In the later case of *State v. Everson,* 166 Wash. 534, 7 P. (2d) 603 (an appeal by the defendant from his conviction of the crime of manslaughter), it appeared that one of the jurors produced a magnifying glass which had not been introduced in evidence and that the jury used this glass in examining an important exhibit in the case. This court, in affirming the judgment appealed from, distinguished the case of *State v. Burke, supra,* holding that no reversible error appeared. It may be noted that, in the *Everson* case, the bailiff did not furnish the magnifying glass which was produced by one of the jurors.

From the record in the case at bar, it appears that the bailiff gave the jury information concerning the whereabouts of appellant's left shoe, informing them that the shoe "was not available," etc. The affidavit of juror Scandrette states, in addition, "that the Judge said to disregard the writing on the pictures." The foregoing statements were absolutely improper, regardless of whether the information conveyed was true or untrue, and constituted serious error, depriving appellant of his right to a fair trial before the court and jury.

Appellant makes other assignments of error but, in view of the fact that the judgment appealed from must be reversed because of the errors above indicated and a new trial ordered, we shall not consider the other assignments presented.

The judgment appealed from is reversed, and the cause remanded with instructions to the trial court to grant appellant's motion for a new trial.

SCHWELLENBACH, C. J., ROBINSON, HILL, and DONWORTH, JJ., concur.