[No. 34008. Department One. July 3, 1958.]

JAMES R. O'BRIEN et al., *Respondents,* v. THE CITY OF SEATTLE, *Appellant.*[1]

[1]Reported in 327 P. (2d) 433.

*A. C. Van Soelen, John A. Logan,* and *Frank W. Draper,* for appellant.

*Frank J. Conway,* for respondents.

FINLEY, J.—This is an action for damages resulting from an automobile accident. The O'Briens alleged that the accident resulted from the failure of the city of Seattle to maintain its streets in a reasonably safe condition for the traveling public, in that the city failed to remove or cover old, unused streetcar tracks. The city denied any negligence on its part, and affirmatively alleged that the accident re-

sulted from the negligence of Mr. O'Brien, the driver of plaintiffs' car. The jury returned a verdict for the defendant, but the trial judge granted plaintiffs' motion for a new trial. The city of Seattle, defendant, has appealed.

The first argument of appellant, hereinafter referred to as the city, which we must consider is the contention that it was error to grant a new trial, because no other verdict could have been permitted to stand; that the city was entitled to a dismissal because: (1) no actionable negligence has been proved against the city, it having been clearly established that the street car tracks were of standard construction and maintenance; and (2) respondents were guilty of contributory negligence as a matter of law.

The facts in this case presented a question for a jury as to the negligence of the city. A mere reference to the recent case of *DeYoung v. Campbell* (1957), 51 Wn. (2d) 1, 315 P. (2d) 629, is sufficient to dispose of the city's contention that the standard construction of the tracks negated negligence on the part of the city.

Contributory negligence cannot be conclusively established by a state of facts upon which reasonable and fairminded men may well differ. Contributory negligence can be determined as a matter of law only in the clearest of cases. This is not such a case.

The trial court justified the granting of a new trial on three grounds: (1) misconduct of the bailiff; (2) error in the giving of instruction No. 9; and (3) erroneous admission of evidence.

"We start with the recognized principle that an order granting or denying a new trial is not to be reversed, except for an abuse of discretion. . . . [Citing case.] This principle is subject to the limitation that, to the extent that such an order is predicated upon rulings as to the law, such as those involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved. . . . [Citing cases.] A much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying it. [Citing case.]" *Johnson v. Howard* (1954), 45 Wn. (2d) 433, 275 P. (2d) 736.

The trial judge indicated that conduct of the bailiff respecting the jury was the factor which most influenced his decision in granting a new trial. The facts with respect to this matter may be stated briefly, as follows:

The case was submitted to the jury early in the afternoon, and a verdict was returned for the city at about ten o'clock p. m. Thereafter, two of the jurors filed affidavits concerning communications between the jury foreman and the bailiff. One juror stated in his affidavit:

". . . that about 9:40 P. M. the foreman knocked on the door, the bailiff came to the door, whereupon the foreman inquired as to the interpretation of Instruction No. 13; that about 10 minutes later, the bailiff knocked at the door of the jury room, opened the door, and stated in affiant's presence and within his hearing, words to this effect: That the jury was to consider Instruction No. 9, and then the jury was to let him know in 30 minutes whether or not they had reached a verdict."

The other juror who made an affidavit corroborated the foregoing in the following language:

". . . the bailiff knocked at the door of the jury room, and in my presence and within my hearing, told the foreman of the jury that he, the bailiff, had telephoned the Judge and that the jury was to consider Instruction No. 9 especially, and that Instruction No. 9 was to be considered more important than Instruction No. 13, about which members of the jury had previously inquired."

The controverting affidavits of the bailiff and his assistant admit that a conversation took place between the bailiff and the jury foreman, but they deny that the bailiff referred to instruction No. 9, or to any other instruction.

Eleven days after the trial terminated, the trial judge recalled the entire jury panel, placed them under oath, and conducted an examination in order "to get to the truth of it." The trial judge is to be commended for the action taken to learn exactly what happened. The transcript of the examination of the jury is before us, and it is unquestionably clear that some remarks passed between the jury foreman and the bailiff about at least one instruction; further, it is clear that a substantial number of the jurors gained the im-

pression that the bailiff had referred the foreman to instruction No. 9.

■ The city strongly contends that the conversation was not prejudicial. This argument is based on the fact that the trial judge in his examination of the jurors specifically asked each juror if this incident with the bailiff had influenced his opinion, and not one juror admitted to being influenced in any manner. This argument, however, overlooks the fact that jurors

". . . cannot impeach their own verdict by saying what influenced them in arriving at it, and for the same reasons cannot sustain their verdict by saying they were not influenced by improper matters which came before them." *State v. Burke* (1923), 124 Wash. 632, 215 Pac. 31.

The jurors can only attest to facts which do not inhere in their verdict. The fact that a conversation took place between the jury foreman and the bailiff, and the substance of that conversation, does not inhere in the verdict; but the effect that conversation had on their decision does inhere in their verdict. The jurors should not have been questioned as to whether they were influenced by the conversation with the bailiff, and their opinions on that subject cannot be considered by the court in determining whether the alleged conduct was prejudicial.

■ In *Marine Sav. Bank v. Young* (1892), 5 Wash. 394, 31 Pac. 864, this court referred to the rule that trial courts should avoid even the appearance of having any communication with the jury after a cause has been finally submitted to it, *except in open court*. The court said:

"Yet we do not think that this rule should be so rigidly applied as to put upon the parties the expense of a new trial in every case in which there has been the slightest communication between the court and the jury while they are deliberating upon their verdict. If the communication is of such a nature that the party against whom the verdict is rendered could by no possibility have been injured thereby, a verdict against him should not be set aside. If the communication is of such a nature that it could possibly have been prejudicial to the rights of the defeated party, then, of course, the verdict should not be allowed to stand."

■ We think that the trial judge put it very well in his memorandum opinion when he said:

"A judge must be very careful that there is no communication of any kind with the jury. He realizes that the bailiff to the jurors in many respects is spokesman for the judge. He is sort of the alter ego of the judge and if there is the slightest question about anything having been said that would influence the jury, under such circumstances there would be sufficient grounds for a new trial."

In the present case, we have the bailiff (in a sense, the "alter ego" of the judge) communicating with the jurors in response to a question about one of the jury instructions. This is in direct violation of RCW 4.44.300 and RCW 4.44-.320. The trial judge stated that he believed his bailiff; i.e., that the bailiff had made no reference to instruction 9; but he still felt that he should grant a new trial, because it is not what the bailiff said that is the determining factor, but rather, what the jurors heard.

As indicated hereinbefore, the trial judge mentioned two other grounds in support of his action in granting a new trial. We agree that instruction No. 9 was a comment on the evidence and should not be given at the new trial.

■ In simple negligence cases, such as this one, in order to be fair to both parties litigant, instructions should not go beyond a simple general statement of the basic requirement of the law respecting ordinary care, unless it is necessary to explain one party's duty with respect to a unique or special phase of the particular case. If the average juror should be able to apply a simple general statement of the law properly to all the facts in the case, then a further instruction is unnecessary.

As to the alleged erroneous admission of testimony, it is conceded by appellant that the decision in *Bulette v. Bremerton* (1949), 34 Wn. (2d) 834, 210 P. (2d) 408, forecloses the introduction of the challenged evidence, except as invited by similar evidence introduced by respondents; we presume the evidence will not be invited at the new trial, so it is unnecessary for us to comment further at this time.

The order granting the new trial should be affirmed. It is so ordered.

HILL, C. J., MALLERY, OTT, and HUNTER, JJ., concur.