[No. 9-39953-1. Division One. December 22, 1969.]
Panel 2

JOAN SPRATT, *Respondent*, v. JOHN DAVID DAVIDSON, *Appellant*.

*Fetty, Olwell & Hamack* and *David H. Olwell,* for appellant.

*Max D. Crittenden,* for respondent.

HOROWITZ, A. C. J.—Plaintiff brought suit to recover damages for injuries negligently caused by the defendants. After a verdict for the defendants, plaintiff moved for a new trial. The court granted plaintiff's motion and pursuant to CR 59(f) entered an order setting forth his reasons. The defendant, John David Davidson, appealed on the ground that the reasons assigned in the order were insufficient as a matter of law.

The court's order stated in substance (1) that during the closing argument of plaintiff's counsel, juror number 10 (who later joined in the ten-to-two verdict for the defendants), because of what appeared to be "some physical difficulty", raised her hand and asked permission to be excused, and (2) that during the closing argument of de-

fendants' counsel he "became ill and was forced to ask the court for a recess. The fact that Mr. Sandelin did become ill . . . made it obvious to the jury that Mr. Sandelin was having difficulty in proceeding." The court further stated that these two incidents "could have influenced the jury favorably toward the defendant" and the court concluded that "Because of the possibility that the verdict of the jury may have been occasioned by an effect upon the jury" of the two incidents described "plaintiff's Motion . . . should be granted."

The nature, seriousness and duration of juror number 10's physical difficulty and of defendants' counsel's illness are not described nor is any statement made concerning the ability of either juror number 10 or defendants' counsel to resume performance of their respective duties. An examination of the record, including the court's oral opinion (see *Knecht v. Marzano,* 65 Wn.2d 290, 396 P.2d 782 (1964) involving RPPP 59.04W(9), the predecessor of CR 59(f)), shows that juror number 10 was temporarily excused and returned in about 10 minutes stating that she could proceed, and did so; and that the recess granted to defendants' counsel was a 5-minute recess following which he continued his argument. The court noted in his oral opinion that

> The case went to the jury at 11:47 . . . They went to lunch and probably came back about 1:30 and the jury signaled at 2:45 that they had reached a verdict, which means they deliberated for an approximate total of one hour and fifteen minutes.

The conclusions drawn by the court from the two incidents described were stated in terms of possibilities. Thus, the court states that the two incidents "could have influenced the jury favorably toward the defendant" and that "Because of the possibility that the verdict of the jury may have been occasioned by an effect upon the jury" of the two incidents, that the "Motion for a New Trial should be granted." The word "possibility" does not appear to be inadvertent when reference is made to the court's oral opin-

ion. The court noted (1) "the Court probably would have been sustained if a motion had been granted to rule, as a matter of law, that the Plaintiff was contributorily negligent . . ."; (2) in allowing the issue of contributory negligence to be submitted to the jury "we had to somewhat stretch a point . . . "; that the incident involving juror number 10 "of itself, would not have been the basis for a mistrial . . . "; (3) that had a motion for mistrial been made on account of the incident involving juror number 10, the motion for mistrial would have been denied because "the case could have proceeded to deliberation by stipulation with only 11 jurors. So I am not particularly persuaded by that point."; (4) defendants' counsel's unexpected illness would have justified the defendants' attorney in making a motion for mistrial but that the parties "elected to proceed with the trial in the hope that it would not affect the jury adversely . . . but the bell, once having been rung, could not be unrung."; (5) "we never will know whether or not the jury was affected . . . that the determination of the jury . . . then becomes a question for speculation, and because of the remotest possibility that the verdict of the jury may have been occasioned by an affect [sic] upon the jury of this momentary, totally unanticipated, nondeliberate . . . condition of juror number 10, Mrs. Borgueois, I am of the opinion that, in fairness to all parties concerned, that I should grant a motion for a new trial."

 In determining the sufficiency of the reasons assigned in the order, the governing standard is whether the conduct or irregularity described establishes a reasonable doubt that the plaintiff received a fair trial. *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651 (1962).[1] See *Johnson v.*

[1] *O'Brien v. Seattle*, 52 Wn.2d 543, 327 P.2d 433 (1958) uses language suggesting a less onerous standard. However, the facts of that case involving a bailiff's communication with the jurors while they were deliberating in direct violation of statute would have justified affirmance of the trial court's order granting a new trial on the basis of the standard later adopted in *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651 (1962).

*Howard,* 45 Wn.2d 433, 275 P.2d 736 (1954) (speedy verdict insufficient).

We must consider also whether with respect to the error or irregularity the complaining party is precluded by waiver from obtaining a new trial. Unless inadequate to remedy the irregularity or misconduct complained of, the aggrieved party must request appropriate court action to obviate the prejudice before the case is submitted to the jury. He is not permitted to speculate upon the verdict by awaiting the result of the trial and then complain of the irregularity or misconduct in case the verdict is adverse. *Casey v. Williams,* 47 Wn.2d 255, 287 P.2d 343 (1955) (juror fell asleep); *In re Orcas Street, etc.,* 87 Wash. 218, 151 P. 506 (1915) (the absence of retained counsel familiar with the case); *Kasey v. Suburban Gas Heat,* 60 Wn.2d 468, 374 P.2d 549 (1962) (improper argument to the jury).

We are of the opinion that the governing standard as described in *Gardner v. Malone, supra,* was not properly applied. The existence of a mere possibility or remote possibility of prejudice is not enough.[2] This is especially true if we are confined to the reasons stated in the order granting the new trial because of the absence of sufficient detail raising a reasonable doubt that the plaintiff received a fair trial. Even after amplification of the order by recourse to the record, it is apparent that the trial court was thinking in terms of possibilities rather than reasonable doubt that plaintiff received a fair trial. Furthermore, the trial court should have held that any prejudice that might have occurred by reason of the occurrence of the two incidents above described might have been obviated had plaintiff requested a precautionary instruction or even moved for a

[2]In *O'Brien v. Seattle,* 52 Wn.2d 543, 546-7, 327 P.2d 433 (1958) the Supreme Court approved the trial court's action in taking testimony concerning the misconduct of a bailiff, disapproving only questions to the jury concerning matters that inhered in the verdict.

mistrial. See *Casey v. Williams, supra; In re Orcas Street, etc., supra; Kasey v. Suburban Gas Heat, supra.*

The judgment is reversed with directions to enter a judgment of dismissal on the jury's verdict.

UTTER and STAFFORD, JJ., concur.