IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 72761-3-I |
| Respondent, | DIVISION ONE |
| v. | |
| JOSHUA DULATRE BROWN, | UNPUBLISHED OPINION |
| Appellant. | FILED: March 2, 2015 |

LEACH, J. — Joshua Brown appeals his conviction for two counts of third degree rape of a child. He challenges the trial court's denial of his motion for new trial based on a bailiff's statements that caused a jury, during its deliberations, to not look at photographs admitted at trial. Because the State has demonstrated beyond a reasonable doubt that the bailiff's improper statements did not prejudice Brown and the claims asserted in Brown's statement of additional grounds lack merit, we affirm.

BACKGROUND

In September 2011, Joshua Brown met A.B. when he pulled up next to her in a car while she walked down Kitsap Way. He drove them to a park, where they talked for 20 to 30 minutes. They discussed their ages: A.B. was 14 and Brown was 24. Brown dropped A.B. off at her home.

One or two days later, Brown called A.B. and came to her house while her parents were in California. They had sexual intercourse twice. Brown told A.B. not to

tell anyone. A day or two later, he called A.B. and told her his parents found out about the relationship and that he could not talk to her anymore.

In March 2012, Brown texted A.B., then 15 years old. A day later, he picked her up at a church near her home, he bought some alcohol, and they went to the Dunes Motel in Bremerton to spend the night. They had sexual intercourse. Later, A.B. told Brown that she was pregnant, and Brown told her not to call him.

On March 20, 2012, A.B.'s parents and step-parents went to Brown's house to confront him. A.B.'s mother asked Brown if he knew A.B.'s age, and Brown confirmed he did, saying that she was "[f]ifteen." During this conversation, an officer from the Bremerton Police Department, responding to a dispatch call, arrived at Brown's home. The officer confirmed Brown's identity by examining a Washington State identification card. The officer did not arrest Brown but gave the parties a case number and told them that a detective would communicate with them at a later time.

Brown accompanied A.B. and her parents to A.B.'s doctor's appointment that day. At the appointment, Brown acknowledged his paternity. Brown and A.B. did not speak after the appointment.

The State first charged Brown with one count of third degree rape of a child in May 2012. The trial court continued the case, and then the State dismissed the case without prejudice on August 7, 2012, the trial date.

On November 17, 2012, A.B. gave birth. A detective then collected deoxyribonucleic acid (DNA) specimens from A.B., her child, and Brown. DNA test results received on April 10, 2013, confirmed Brown's paternity by a probability of 99.99 percent.

On May 2, 2013, by first amended information, the State charged Brown with two counts of third degree rape of a child resulting in pregnancy. Brown filed a motion to dismiss for a speedy trial violation based on the previous case against Brown. The motion also requested that the court set trial within the 60-day limit for speedy trial on the current charges. The court denied the motion to dismiss and set Brown's trial date for May 28, 2013, to comply with the current request for speedy trial. The State filed a second amended information on May 28.

At trial, the court admitted as evidence photographs of A.B. and her child offered by the State. A jury found Brown guilty, finding also that the crime had caused A.B.'s pregnancy. The trial court sentenced Brown to two concurrent 50-month prison sentences.

After the trial, the prosecutor spoke with the jurors. The prosecutor filed an advisory memorandum revealing that the jurors failed to review the admitted photographs.

According to the declaration of the bailiff, a juror had asked her during trial if the jury would get to see the photographs presented. The bailiff responded that the jurors would see all admitted evidence but she did not know if the trial court had admitted the photographs. Before the jury deliberated, the bailiff carried the evidence in a bag to the jury room, told the jurors that bag contained the exhibits, and left the room.

After the verdict, according to the prosecutor's advisory memorandum, the jurors told the prosecutor that they failed to review the photographs because the bailiff told them that they could not do so. The prosecutor immediately questioned

the bailiff, and the bailiff responded that she thought the trial court had not admitted the photographs.

Brown filed a motion for a new trial on the grounds that the bailiff's comments prevented the jury from considering all evidence at trial. The trial court denied Brown's motion, finding error but concluding that error was harmless because the bailiff made the statement before parties rested their case and the jury had access to the exhibits.

Brown appeals.

## ANALYSIS

We review a trial court's denial of a motion for new trial for abuse of discretion.[1] We reverse a trial court's exercise of discretion only if it "'is manifestly unreasonable or based upon untenable grounds or reasons.'"[2]

Brown argues that the trial court "abused its discretion by denying Brown's motion for a new trial because the jury did not properly consider all the admitted evidence in reaching a verdict" when the jury understood the bailiff's instruction to mean it could not review the photographs of A.B. and her daughter. The State concedes the impropriety of the bailiff's communications, but contends that they did not prejudice Brown and thus constituted harmless error.

The United States and Washington Constitutions each guarantee a defendant the right to a fair and impartial jury trial.[3] Neither a trial court nor a bailiff may

---

[1] State v. Copeland, 130 Wn.2d 244, 294, 922 P.2d 1304 (1996).
[2] State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008) (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).
[3] U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 3, 22.

communicate with the jury about a case in the absence of the defendant.[4] A trial court should promptly disclose any ex-parte communication to the parties and determine if the communication requires a new trial.[5] An improper communication is an error of constitutional dimensions, but may constitute harmless error if inconsequential.[6] Where a defendant contends that an improper communication prejudiced him, the State must prove beyond a reasonable doubt that either no error occurred or that any error was harmless.[7] To evaluate the impact a comment had on a jury, we look not to what a bailiff said, but what the jurors heard.[8]

Brown relies on State v. Moore to show that the bailiff's communication in this case constituted reversible error.[9] In Moore, the court admitted as evidence and sent to the deliberating jury both a right shoe and a photograph of a shoe imprint labeled as a left shoeprint.[10] Jurors reported in affidavits that when a juror asked the bailiff for the left shoe, the bailiff told the jury that a left shoe was unavailable because it had been returned to City Hall and that the judge said to disregard the writing on the photographs.[11] During their deliberations, the jurors examined the right shoe and the photograph of the shoe imprint carefully.[12] The court found that regardless of the truth of the bailiff's statement, the communications constituted serious error and

---

[4] RCW 4.44.300; State v. Bourgeois, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997).

[5] Bourgeois, 133 Wn.2d at 407 (quoting Rushen v. Spain, 464 U.S. 114, 119, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983)).

[6] Bourgeois, 133 Wn.2d at 407.

[7] State v. Caliguri, 99 Wn.2d 501, 509, 664 P.2d 466 (1983).

[8] O'Brien v. City of Seattle, 52 Wn.2d 543, 548, 327 P.2d 433 (1958).

[9] State v. Moore, 38 Wn.2d 118, 228 P.2d 137 (1951).

[10] Moore, 38 Wn.2d at 120, 124.

[11] Moore, 38 Wn.2d at 122-23.

[12] Moore, 38 Wn.2d at 122-23.

required a new trial.[13]  The court's opinion does not reflect that the State made any claim that the error did not prejudice Moore.

In contrast, here, the State contends that the bailiff's comments did not prejudice Brown because the photographs contained no exculpatory content.  The State asserts that they amounted to cumulative evidence showing that A.B. became pregnant and gave birth to a child.  Brown did not contest either event. Brown's trial counsel did not reference the photographs in closing argument.  Brown's appellate counsel suggests no way that the jury's failure to view the photographs could possibly have prejudiced Brown.  Unlike Moore, the bailiff's comment in this case did not cause jurors to view possibly exculpatory evidence in a manner prejudicial to the defendant.  Moreover, the State presented testimony that A.B. had engaged in sexual intercourse with Brown when she was 14 and 15 years old and that she became pregnant with and gave birth to their child.  The record includes ample evidence that supported each element of the crime of rape of a child[14] and the aggravating circumstance that the offense resulted in A.B.'s pregnancy.[15]  The State proved beyond a reasonable doubt that the bailiff's error could not have prejudiced Brown.  Because the bailiff's error was thus harmless, the trial court did not abuse its discretion when it denied Brown's motion for a new trial.

We have reviewed Brown's statement of additional grounds.  He asserts violations of his right to due process, right to a speedy trial, protection against double

---

[13] Moore, 38 Wn.2d at 127.

[14] RCW 9A.44.079(1) provides: "A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim."

[15] See RCW 9.94A.535(3)(i).

6

jeopardy stemming from the dismissal and subsequent refiling of his case, and his right to effective assistance of counsel. He also alleges prosecutorial misconduct. We do not have a sufficient record from Brown's first case to consider his speedy trial claim. Each of his remaining claims lacks merit.

## CONCLUSION

Because the State has demonstrated beyond a reasonable doubt that the bailiff's improper statements did not prejudice Brown, we have an insufficient record to consider Brown's speedy trial claim, and the other claims asserted in Brown's statement of additional grounds lack merit, we affirm.

Leach, J.

WE CONCUR: