**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80996-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | ORDER GRANTING MOTION |
| JOSEPH HENRY HALL, | ) | FOR RECONSIDERATION, |
| | ) | WITHDRAWING OPINION, AND |
| Appellant. | ) | SUBSTITUTING OPINION |
| | ) | |

Appellant Joseph Hall moved to reconsider the court's opinion filed on January 10, 2022. Respondent State of Washington has filed a response. The panel has determined that the motion for reconsideration should be granted. The opinion shall be withdrawn and a substitute published opinion shall be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; and it is further

ORDERED that the opinion filed on January 10, 2022 shall be withdrawn and substituted with a new published opinion.

FOR THE COURT:

_Mann, J._

_Andrus, C.J._

_Verellen, J._

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80996-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOSEPH HENRY HALL, | ) | |
| | ) | PUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, J. — RCW 4.44.300 forbids a bailiff from communicating with the jury during its deliberations, except to inquire if they have reached a verdict. The bailiff is in a sense the "alter ego" of the judge, and improper communication between the court and the jury is an error of constitutional dimensions impacting the right to a fair and impartial jury. When a bailiff communicates with a jury, the trial court must examine the remarks for "possible prejudicial impact." If the court determines the communication had a possible prejudicial impact, a mistrial is required.

Joseph Hall was convicted of two counts of first degree rape of a child. The trial court declared a mistrial on two counts of first degree child molestation due to a deadlocked jury. On appeal, Hall advances multiple arguments, including: (1) that the trial court erred in denying his motion for a mistrial based on comments made by the

No. 80996-2-I/2

bailiff to the jury and (2) double jeopardy precludes retrial of the two counts of first degree child molestation. Because we cannot conclude that the bailiff's comments did not have a possible prejudicial impact on the verdict, we agree that the trial court erred in denying Hall's motion for a mistrial. Because the trial court properly exercised its discretion in discharging the jury, however, double jeopardy does not preclude retrial of the two counts of first degree child molestation. We reverse and remand for a new trial.

<u>FACTS</u>

The State charged Hall with two counts of first degree child rape and two counts of first degree child molestation.[1] A jury trial in Snohomish County Superior Court began on October 15, 2019. The case was submitted to the jury on October 23, 2019. On the eighth day of deliberations, November 1, the bailiff received a question from the jury. The bailiff described the event as follows:

> So I received the juror question asking me if Juror 4 could be dismissed. The juror stated that she was not ill but just wanted to leave, and they asked if they could call in the alternate. I told them that if they did that, they'd have to start over and that generally that's not what the alternate is for, but they told me to ask it anyway.

After the exchange, the bailiff requested the jury write its question on one of the jury forms. The jury question stated, "Juror # 4 would like to be dismissed and an alternate to take her place." Then, according to the bailiff:

> The jury rang again about 20 minutes later and asked what would happen if they reached a verdict of guilty on two counts and did not answer the other ones. I said that that is not a question I can answer, but if you want to write it down, we can call the attorneys in. And they said that they would wait until they heard back on the first question.

---

[1] The issues on appeal focus on the jury deliberations. Thus, this opinion summarizes those events only, and not the facts related to the crimes charged.

-2-

After receiving the jury's initial question, the trial court began a colloquy with counsel. Defense counsel was en route to court and participated at first by telephone. Shortly after, the trial court received a second inquiry from the jury about a verdict. The colloquy was halted until defense counsel arrived in court. When defense counsel arrived, the court informed the parties that it had received a second inquiry from the jury. The notice stated, "We have a verdict on 1 and 2. Can we leave 3 and 4 blank or hung?"

Before the court could address this question, defense counsel moved for a mistrial based on juror misconduct over the exchange with the bailiff, as well as the potential discussion of the case outside of deliberations. Rather than decide on the motion, the court proposed polling the jury. Defense counsel did not object.

The court brought in the jury and instructed them that the questions asked would require yes or no answers only. The court first asked the presiding juror, "There is an indication that a verdict has been reached on one or more of the counts; is that correct?" The juror answered yes. The court then asked, "Yes or no, is there a reasonable probability of the jury reaching a verdict as to all of the counts within a reasonable length of time," to which the presiding juror also answered yes. The court then asked the remaining jurors the same questions—all jurors answered yes to first; all but two answered no to the second.

Following the polling, the jury returned to the jury room and the trial court brought out each juror individually to ask if the bailiff's comments about the substitution of juror 4 influenced their responses to the previous questions. All jurors answered no.

After concluding the polling, the trial court denied Hall's motion for mistrial. The trial court explained that while it violated the jury's instruction not to write questions suggesting its verdict, the jury could still change its mind in accordance with the instruction on the law. The court then proposed that it ask the jury if its initial request for juror 4 to withdraw was still outstanding and, if not, that it instruct the jury to return to deliberations.

The trial court again called in the jury and asked if the request that juror 4 be dismissed was withdrawn. The presiding juror answered that the request was withdrawn. The court then instructed the jury that if it had questions about how to respond on their verdict forms, or if there is an inability to reach a verdict, they already have instructions in their packet.

Within 10 minutes of the jury returning to deliberations, the trial court received notice that juror 4 wanted to be excused. The court then brought in juror 4 to inquire into the reason they wanted to be excused. The following exchange occurred:

> THE COURT: . . . I am going to try and ask some questions to understand why you would like to be excused. So I am going to try to ask this in a series of yes/no questions, and if I don't get to the right question, I will ask you to identify that I still have not gotten to the right place. Okay?
> So are you asking to be excused because you are unable to continue as a juror in this case because of other obligations or something else that's a responsibility of yours outside [of] this courthouse?

> JUROR 4: No.

> THE COURT: Okay. Are you asking to be excused because of the deliberations themselves, either the questions you are being called to answer as a juror in this case or just the process of deliberations?

> JUROR 4: If I understand your question then, yes.

> THE COURT: So what do you think my question is asking?

No. 80996-2-I/5

> JUROR 4: I am asking to be excused because the charges that we are deliberating are difficult for me.

> THE COURT: Is that the nature or is that the basis for your request or—

> JUROR 4: Deep down it is. Am I allowed to talk right now?

> THE COURT: I guess I am—I want to be very careful in part because it is essential that your remarks not reveal to any of us the deliberations that the jury has been engaged in now. Today is day eight of jury deliberations, so it is evident that the jury has been committed to this process for an extended period of time. Does the length of the deliberations have anything to do with your request to be excused?

> JUROR 4: No. I think I could answer about it. I am just terrified of making the wrong call. Like—

> THE COURT: All right.

> JUROR 4: —it's a lot of responsibility and a lot of weight.

> THE COURT: Anything else you think we should know?

> JUROR 4: It's really hard to be in a room with 11 other people all day long.

> THE COURT: Anything else?

> JUROR 4: (Juror 4 nodded.)

> THE COURT: Do you feel that at this point in time your—you have been able to fulfill your role as a juror in accordance with the Court's instructions in the law?

> JUROR 4: Have I done it so far?

> THE COURT: Yes.

> JUROR 4: Yeah.

The parties had no questions and juror 4 returned to the jury room.

Defense counsel again expressed her concerns that juror 4 may be hastened or coerced. The court declined to dismiss juror 4 and, instead, concluded that under CrR

-5-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 80996-2-I/6

6.10 it would direct the jury to return the decisions that they had made at that point and to declare mistrial as to any counts that they had not yet agreed on "whatever that agreement [was]." The court expressed that it did not know whether the jury could do it that day or when the courthouse opened the following Monday. The court delivered final instructions to the jury:

> THE COURT: Please be seated. Members of the jury, I asked you all to be brought in because I am going to give you an instruction at this point in the case. The information that I have received by—from the questions I have asked you indicates that the jury should be directed to return whatever verdict you have reached on the counts that you have addressed and that a mistrial should be declared as to any counts you have not been able to unanimously address. I know you don't have the materials with you in this department's jury room, so those will be brought to you. I am not telling you that you need to do that at this moment in time, but the courthouse will be open for a while longer this evening, and then it will be open again on Monday. Does that make sense? It does not make sense? Okay. So the presiding juror is shaking her head.
>
> There is a process that the Court follows when it appears that the jury will not be able to reach a unanimous decision as to any or all counts in a case. There are many factors that a judge in my position weighs when considering that question, and here I have concluded that the deliberations, which have been ongoing for eight days. You have been a responsible and conscientious jury in terms of arriving promptly every morning, starting your deliberations by about 9:30, deliberating through the lunch period and well into the afternoon, usually leaving about 3:00 or 3:30 each afternoon. It demonstrates to the Court that collectively you have extended considerable effort to address all of the issues that have been put before you.
>
> At this time I am—based on your earlier declaration that you have reached a verdict as to one or more counts, I am indicating that it is a time—this is the time to reflect that on the verdict form or verdict forms and that as to the other matters that you have not been able to address unanimously, the Court is prepared to discharge you from further service in this case. Does that make sense now? Juror No. 9, the presiding juror is shaking her head. Does that make sense to the rest of you?
>
> I am going to excuse you to our closest jury room, which is the one in the courtroom at this time. If you feel more comfortable back in the jury

-6-

No. 80996-2-I/7

room where you have been deliberating today, you may certainly go there. That is entirely up to you. Please rise for the jury.

Fourteen minutes after this instruction, the jury returned a verdict finding Hall guilty of two counts of first degree child rape and returned blank verdict forms for two counts of first degree child molestation. The court declared a mistrial on the two counts of first degree child molestation. Following the verdict, Hall moved for a new trial, relying in part on declarations of jurors 4 and 12. The trial court denied the motion for a new trial.

The trial court imposed an indeterminate cumulative sentence for both first degree child rape convictions of 160 months to life, imposed several conditions of community custody, and required Hall to pay community custody supervision fees.

Hall appeals.

ANALYSIS

A. Bailiff's Communications

Hall argues that the bailiff's communication to the jury had a possible prejudicial impact requiring reversal and a new trial. We agree.

RCW 4.44.300 forbids a bailiff from communicating with the jury during its deliberations, except to inquire if they have reached a verdict. The statute was "designed to insulate the jury from out-of-court communications that may prejudice their verdict." State v. Crowell, 92 Wn.2d 143, 147, 594 P.2d 905 (1979). The bailiff is in a sense the "alter ego" of the judge, and improper communication between the court and the jury is an error of constitutional dimensions impacting the right to a fair and impartial jury. State v. Bourgeois, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997).

-7-

We review a trial court's order granting or denying a new trial motion for an abuse of discretion. Crowell, 92 Wn.2d at 145. A stronger showing of an abuse of discretion is needed to set aside an order granting a new trial than, as here, one denying a new trial. Crowell, 92 Wn.2d at 146.

In ruling on a motion for mistrial based on communications between the bailiff and jury, "the trial court simply should have 'attempt[ed] to discover what was said [by the bailiff] and examine the remarks for their possible prejudicial impact.'" Crowell, 92 Wn.2d at 147 (emphasis omitted) (alterations in original) (quoting State v. Christensen, 17 Wn. App. 922, 926, 567 P.2d 654 (1977)).[2] The jurors should not be "questioned as to whether they were influenced by the conversation with the bailiff, and their opinions on that subject cannot be considered by the court in determining whether the alleged conduct was prejudicial." Crowell, 92 Wn.2d at 146-47. "[N]either the trial court nor we can consider a juror's statements as to whether the conversation with the bailiff influenced the jury; such effects inhere in the verdict and cannot be used to impeach it." Christensen, 17 Wn. App. at 925-26 (emphasis omitted).

Christensen is informative. There, Division Two considered several interactions between the bailiff and jury. On the first, the jury foreperson requested a transcript of the trial proceeding or, alternatively, a reading of the record. The bailiff properly informed the jury that the request could not be met. Next, the foreperson requested "clarification on the legal points of [the jury's] instructions to see if [it] could get them a little bit clearer." Rather than relaying the request to the judge, the bailiff advised the

---

[2] Contrary to the State's assertion, the truthfulness of the bailiff's statements do not foreclose them from having a possible prejudicial impact. See Christensen, 17 Wn. App. at 924-25 (holding that the bailiff's comments about the impracticability of reconvening court to consider its questions hastened the jury's verdict).

-8-

jury that such a clarification would involve reconvening all of the courtroom principals—a procedure that could take hours—and that the court "'didn't like to do it because of the time factor involved.'" Christensen, 17 Wn. App. at 925. The foreperson later asked what would happen if the jury could not return verdicts on all counts, to which the bailiff responded the defendant "'would have to be retried on anything [that the jury] couldn't reach a verdict on.'" Christensen, 17 Wn. App. at 925.

After hearing argument, the Christensen trial court determined that the bailiff's comments had been made after the jury had reached the verdict on the substantive crimes thereby rendering a mistrial unnecessary. Christensen, 17 Wn. App. at 925. Division Two reversed, holding that "[a]fter review of the entire record, we cannot say that we do not have any reasonable doubt that the bailiff's remarks had no prejudicial effect on the jury." Christensen, 17 Wn. App. at 926.

The State argues that Christensen is inapposite because juror 4 asked to be excused despite the bailiff's comment and, thus, the jury's actions would have been the same regardless of the interaction with the bailiff. The State further points out that the trial court polled the jurors after they returned their verdict and all, including juror 4, confirmed that they agreed with the verdict.

The State's argument, however, ignores the trial time line. After 8 days of deliberations, a mere 20 minutes elapsed between the jury being informed that if juror 4 were excused they would have to start all over and the jury reaching a verdict. The jury's actions imply potential prejudice that is perhaps more severe than that in Christensen, where the jury continued deliberations for an extended time despite the bailiff's remarks. It is at least possible that the bailiff's comments resulted in juror 4

No. 80996-2-I/10

being pressured to reach a verdict.  Consistent with <u>Christensen</u>, examining the record as a whole "we cannot say that we do not have any reasonable doubt that the bailiff's remarks had no prejudicial effect on the jury."[3]  <u>Christensen</u>, 17 Wn. App. at 926.

B. <u>Double Jeopardy</u>

Hall argues that double jeopardy precludes retrial of the two counts of first degree child molestation.  We disagree.

If a trial court "precipitously discharges the jury without disclosing an adequate basis for such discharge, a retrial will be denied on the basis of double jeopardy."  <u>State v. McCullum</u>, 28 Wn. App. 145, 150-51, 622 P.2d 873 (1981), <u>rev'd on other grounds</u>, 98 Wn.2d 484, 656 P.2d 1064 (1983).  We accord great deference to a trial court's decision to declare a jury deadlocked and thus a mistrial.  <u>State v. Jones</u>, 97 Wn.2d 159, 163-64, 641 P.2d 708 (1982) (quoting <u>Arizona v. Washington</u>, 434 U.S. 497, 510, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)).  In making its decision, the trial court principally considers "the length of time the jury had been deliberating in light of the length of the trial and the volume and complexity of the evidence."  <u>State v. Taylor</u>, 109 Wn.2d 438, 443, 745 P.2d 510 (1987).  The court may also consider any progress in the deliberations.  <u>Taylor</u>, 109 W.2d at 443.

To explain its decision to declare a mistrial, the trial court stated:

Let me express more fully on the record than I have that my decision to declare a mistrial as to whatever count or counts that have not yet reached a unanimous verdict on is founded on several factors.  First, they have been deliberating for many days and conscientiously by all appearances.  The fact that two of the jurors when polled indicated that they didn't believe that the jury could reach a verdict on all counts within a reasonable length of time indicates at least some concern that that is true.

---

[3] While the trial court polled the jury to determine whether the bailiff's remarks influenced their verdict, that inquiry was improper and inheres in the verdict.  We will not consider the inquiry on appeal.  <u>Christensen</u>, 17 Wn. App. at 925-26.

> But persuasively the fact that Juror No. 4 would simply like to be excused, and I think her words were she is <u>terrified of making the wrong decision</u> indicates to the Court that, indeed, to direct the jury to go back and continue deliberations could produce a verdict that is not a reflection of a freely given decision by all jurors. And, accordingly, it is appropriate to declare a mistrial as to any counts that has not been decided unanimously by the jury. So I will be in recess until we hear further from the jury or some other matter comes up.

Here, the trial court provided an adequate explanation regarding its decision to discharge the jury on the two counts of first degree child molestation. The jury had deliberated for eight days, had reported that it was hung on the two molestation counts and, when it was questioned whether it could reach a verdict on all counts, two jurors replied that they could not. Further, juror 4 renewed her request for excusal, citing the difficulty that she was having in making a decision and being in the jury room with eleven people for such an extended period of time. Thus, the declaration of a mistrial was proper and double jeopardy does not preclude retrial of the two counts of first degree child molestation.

Reversed and remanded for a new trial.

_Mann, J._

WE CONCUR:

_Andrus, C.J._

_Verellen, J._

-11-